Sue A. MEREDITH, Plaintiff–Appellee,

v.

Otis R. BOWEN, Secretary of Health
and Human Services,
Defendant–Appellant.

No. 86–2537.

United States Court of Appeals,
Seventh Circuit.

Argued April 7, 1987.
Decided Nov. 9, 1987.

Donald T. McDougall, Asst. Regional Counsel, Dept. of Health & Human Services, Chicago, Ill., for defendant-appellant.

Tracey A. Kern, Barrett & McNagny, Ft. Wayne, Ind., for plaintiff-appellee.

Before COFFEY, RIPPLE and MANION, Circuit Judges.

COFFEY, Circuit Judge.

The Secretary of Health and Human Services ("the Secretary") appeals from the district court's order awarding Sue Meredith social security disability benefits. We reverse the district court's decision and affirm the administrative determination that Meredith was not entitled to disability benefits under the Social Security Act for the period in question.

## I.

Sue Meredith worked as a waitress until May 1967 when her legs and pelvis were fractured and her spine was injured in an automobile accident. After being hospitalized for seven weeks, she was discharged. In June 1968, Meredith was readmitted to the hospital complaining of pain in her neck. Dr. Brown performed a spinal fusion, and Meredith was discharged a month later, in July 1968.

Meredith originally applied for social security disability benefits in September 1969. The Social Security Administration ("the SSA") concluded that Meredith was disabled from the date of the automobile accident until February 1970, two months after her doctor had determined she could return to work. Meredith sought a hearing on the issue of whether her disability had ended, and a hearing examiner found that Meredith could have returned to work in December 1969. The examiner concluded that Meredith's disability benefits were properly terminated in February 1970, and she did not appeal this determination.

Meredith was cared for by several doctors over the next few years. Dr. Brown, a surgeon, continued to treat her on an outpatient basis for neck and shoulder pain and a reoccurring infection in her hip, which was the bone graft donor site. In November 1971, Dr. Pitts, a general practitioner, also treated Meredith for complaints of neck and shoulder pain. He observed some limitations in the movement of Meredith's neck, but noted otherwise good bending, extension, and rotation movement. Dr. Pitts also noted Meredith's complaints of muscle tension headaches.

Dr. Mock, a consulting physician, examined Meredith for Dr. Pitts on November 30, 1971. He found that her range of motion in her neck was limited to 50% in all directions, but that she was without pain in motion, and he could observe no sensory deficits in the upper extremities. Dr. Mock also viewed X rays of the spinal fusion, and he saw evidence of a compression fracture of the fused vertebrae and possible motion between the fused vertebrae. He thought a repeat surgical fusion might be beneficial, and he referred Meredith to a neurological surgeon, Dr. Bossard, for a consultation.

Dr. Bossard examined Meredith on January 5, 1972. He noted Meredith's complaints of pain and dizziness, and he found "severe congenital or posttraumatic changes in the cervical spine with the changes at the occipital nuchal junction as well as those changes noted at the fifth cervical interspace and the upper cervical spine. These changes undoubtedly account for her symptoms." Dr. Bossard doubted that Meredith had any nerve root impairment, and he concluded that a repeat cervical fusion or any other surgical procedure at this time would not be of much help.

Dr. Stibbins, another general practitioner, examined Meredith four times between May 1971 and November 1973. On May 25, 1971, Meredith complained of headaches and pain; Dr. Stibbens found only an abnormal glucose level and prescribed Valium. On October 6, 1972, Meredith com-

plained of "trouble with her bones, especially her hip bone." Dr. Stibbens conducted a complete physical examination and found Meredith to be normal except for very minimal osteoarthritis in her spine. He treated Meredith for a vaginal infection on January 29, 1973. Her final visit to Dr. Stibbens was on November 6, 1973 for an abscess on her hip, and he advised her to continue under the care of Dr. Brown. Dr. Stibbens did not feel that he had seen or treated Meredith enough to render an opinion as to whether she was disabled in 1973.

In November 1973, Dr. Mock again examined Meredith for the problem of recurrent abscesses on her hip. He admitted Meredith to a hospital for the hip problem and noted at the time moderate limitation of motion of the cervical spine and no other remarkable findings regarding her head, neck, or shoulders. Meredith also told Dr. Mock that her headaches were less severe than at the time of her previous visit in 1971. Meredith was released six days later after a hip operation with the wound healing nicely.

Meredith applied a second time for disability benefits on November 23, 1973. The SSA calculated that Meredith's insured status for Title II disability benefits ended on December 31, 1972 [1] and found that she was not disabled prior to that date. Moreover, the work evidence from this period established that Meredith worked eight to nine hours a day as a tomato peeler during the harvest season of 1973 at Eaton Food Products, a canning company. She said she left the job because the "canning season ended, but I would have stopped anyway because the pain was great." The SSA denied Meredith's second application for benefits on January 14, 1974, and she failed to request reconsideration of that decision.

Meredith received no further medical treatment until May 1981 when she was hospitalized for an infection and abscess on her left hip at the donor site. Dr. Stibbens

treated Meredith and noted that her neck was supple with no masses. She was discharged two and a half weeks later "as improved."

Meredith was again hospitalized in September 1981 for the infection and abscess on her left hip. She complained of some shoulder pain, but she told physical therapists she was not limited from doing anything. She was confined for a period of two and a half weeks and then discharged.

Meredith's next medical treatment occurred in August of 1983 after she suffered severe burns when a pressure cooker exploded. During the physical examination, Meredith indicated that she took pain medication for her hip but took no other medicines and had no other medical problems. The examination again revealed that Meredith's neck was supple with no masses.

On January 26, 1984, Meredith filed her third application for disability benefits. In this application, the basis for this litigation, she claimed numbness in all her fingers, pinched nerves, and that she developed "spurs" in the area of her spinal fusion. She initially stated that she was unable to work after April 2, 1978, but she subsequently changed the date to February 1970.

A month after filing this third application, Dr. Kachmann, a surgical associate, began treating Meredith for compression of the cervical spine cord. He noted a 60% limitation of motion in the cervical spine. He also stated that he did not think she could have secured other employment, considering her age of 58. Dr. Stibbens also opined that he considered Meredith totally disabled in April 1984.

On June 7, 1985, an Administrative Law Judge ("ALJ") discovered that the SSA had miscalculated the expiration of Meredith's insured status. The ALJ found that her insured status actually expired on March 31, 1973, and not on December 31, 1972 as determined during Meredith's second application for disability benefits. The

---

1. In order to receive Title II disability insurance benefits, Meredith had to prove she was disabled on or before the date that her insured status expired. *See* 42 U.S.C. § 416(i)(3). *See*

*also Jeralds v. Richardson,* 445 F.2d 36 (7th Cir.1971) (no benefits if disability occurred after insurance lapsed).

ALJ therefore reopened the second application in order to decide whether Meredith had been disabled during the last quarter of her insured status: January 1, 1973 through March 31, 1973.[2]

In addition to considering the above stated medical evidence, the ALJ held a hearing and Meredith testified that she suffered from pain, dizziness, and problems with the strength of her grip since 1972 due to numbness in her arms and hands and that her problems had gotten progressively worse. She also complained of problems standing for long periods because her "knee would pop out," and that sitting was a problem because she would get sick and experience severe headaches if she sat too long. The ALJ also considered a vocational expert's response to a hypothetical question, asking what kind of jobs, if any, a woman of Meredith's education and age (45) in 1973 could perform, given that she suffered a 50% limitation in range of motion in all directions, but the motion did not appear to be painful. The vocational expert responded that under these circumstances, he thought a person in Meredith's position would be able to perform work as a cashier, ticket taker, gate guard, telephone quotation clerk, or dispatcher in 1973. If, in addition, the person had difficulty in gripping bilaterally due to numbness in her hands and arms, the expert indicated that such a person might not be able to be a cashier, but could do the remaining jobs.

After reviewing the medical evidence, Meredith's testimony, and the answers of the vocational expert, the ALJ found that Meredith had a severe impairment, but did not have any impairment or any combination of impairments to allow her to come within the confines equivalent to a per se disabling condition. The ALJ also found that while Meredith could not perform her past work, she was functionally capable of performing the jobs referred to in the vocational expert's response. The ALJ concluded that Meredith was not entitled to a period of disability or disability insurance benefits requested in her third application.

The district court reversed the ALJ's decision. The court decided that the ALJ did not give the proper consideration to Meredith's complaints of pain, and that the ALJ's hypothetical questions to the vocational expert were defective because they did not include any consideration of Meredith's pain in assessing the work she could have performed. The trial court concluded that after reviewing the record in its totality, the ALJ's decision was not supported by substantial evidence and reversed the decision, awarding disability benefits from January 1, 1983.

II.

In reviewing the decision of the ALJ in cases such as this one, the district court as well as the appellate court are obliged to review the entire record and all the evidence therein. However, after review we must accept the findings of the ALJ if supported by substantial evidence. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir.1986) (per curiam). In so doing, we may not decide the facts anew, reweigh the evidence, or substitute our own judgment for that of the ALJ. *See Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir.1984).

Here, the district court found that the ALJ "effectively ignored the objective medical evidence of [Meredith's] pain provided by Dr. Bossard and others." We disagree with this conclusion, for the ALJ stated in his findings that Meredith's "subjective complaints concerning the limitation of motion in her neck, as well as pain with motion, are considered credible in light of the above objective medical evidence...." This reveals that the ALJ "sufficiently considered" the evidence of pain, as he was

---

**2.** As the district court correctly noted, Meredith would normally be precluded from relitigating the administrative determination that she was not entitled to disability benefits because she failed to seek review of the denial of her second application and that decision is res judicata. *See McGowen v. Harris*, 666 F.2d 60 (4th Cir. 1981). Because the Secretary reopened Meredith's case and determined that her insured status actually expired three months later than originally calculated, administrative res judicata does not bar Meredith from seeking disability benefits for this time period. *Id.* at 65–66.

required to do. *Waite v. Bowen*, 819 F.2d 1356, 1361 (7th Cir.1987). *See also Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir.1985).

Next, the district court decided that because the medical evidence of record did corroborate Meredith's complaints of pain, "the ALJ's conclusion should have been different." The court noted that Dr. Bossard's medical report of January 5, 1972 included complaints of pain and concluded that her medical condition accounted for these symptoms. Since her statement as to pain was supported by medical evidence, the court concluded that under the language of the statute, the ALJ was required to find her disabled.

The pain standard established by the Social Security Disability Reform Act of 1984, 42 U.S.C. § 423(d)(5)(A), provides:

> "An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability ...; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence ..., would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques ... must be considered in reaching a conclusion as to whether the individual is under a disability."

The district court reasoned that Congress intended to "liberalize" present policies by this amendment so as to "restore confidence" in the social security program. The district court concluded that the amendment mandated a result different from the one reached by the ALJ because Meredith's complaints of pain were supported with medical evidence.

■ The parties in their briefs have discussed at length the legislative history of the 1984 Amendment to determine Congress's intention in enacting this statute. We do not believe it is necessary to delve into an investigation of this nature. While legislative history is particularly helpful in guiding a court's interpretation when a statute is ambiguous, *see Smith v. Bowen*, 815 F.2d 1152 (7th Cir.1987) (per curiam), a court need not look beyond the words to interpret a statute if the language is clear and unambiguous. *Kelly v. Wauconda Park District*, 801 F.2d 269 (7th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1592, 94 L.Ed.2d 781 (1987). Indeed, the plain language is the best evidence of the statute's meaning. *Grant v. Chicago Truck Divers, Helpers & Warehouse Workers Union*, 806 F.2d 114 (7th Cir.1986).

■ Here, the language of the statute is unambiguous. Objective medical evidence of pain must be considered by an ALJ in determining whether an individual is disabled. Such evidence does not, however, mandate a finding of disability. The ALJ in this case did consider Meredith's objective medical evidence of pain, as required by the statute. The district court's statement that the ALJ's conclusion should have been different amounts to nothing more than a substituting of his judgment for that of the ALJ, which neither the district court nor an appellate court may properly engage in. *Garfield*, 732 F.2d at 610.

■ The district court also concluded that the vocational expert's responses to the hypothetical questions did not correctly evaluate Meredith's residual functional capacity because the questions failed to include any consideration of Meredith's pain. All that is required is that the hypothetical question be supported by the medical evidence in the record. *See, e.g., Waite*, 819 F.2d at 1361. In the case at hand, the question is based on Dr. Mock's determination that Meredith's range of motion in her neck was limited to 50% in all directions, but that there was no pain with the motion and no sensory deficits in the upper extremities. Hence, the hypothetical questions accurately described Meredith's impairments, and the expert's responses were probative of her residual functional capacity.

III.

Having concluded that the district court erred in reversing the ALJ's decision, we are also convinced that the ALJ's decision that Meredith was not disabled prior to March 31, 1973 was supported by substantial evidence in the record. Her physical complaints during this time period related almost exclusively to problems with her hip, and not to her neck impairment which she claims as her disability. In fact, her spinal condition appeared to improve during this period, and the physical examination in the nearest proximity to the time at issue (Dr. Mock's—November 1973) noted no other remarkable findings regarding Meredith's head, neck, or shoulders. While we sympathize with the claimant and her physical problems and we realize that she was diagnosed as totally disabled by Drs. Kachmann and Stibbens in 1984, these diagnoses simply are not relevant to her physical condition some eleven years earlier in 1973 when her insured status expired.

One final issue deserves our attention. In her brief, Meredith claims that the Secretary bore the burden of proving that Meredith's condition had improved because she was found to be disabled from May 1967 to December 1969, and this created a presumption of continuing disability. While this may be true in a case where the Secretary seeks to *terminate* disability benefits, *see, e.g., Haynes v. Secretary of Health and Human Services*, 734 F.2d 284 (6th Cir.1984), a claimant *seeking* benefits under the Social Security Act has the burden of proving the existence of a disability. *Lauer v. Bowen*, 818 F.2d 636, 638 (7th Cir.1987) (per curiam). In this case, Meredith was seeking disability benefits after her original benefits period had terminated. Thus, she bore the burden of proving that she was disabled.

The decision of the district court is RE-VERSED, and the ALJ's decision that Meredith was not entitled to disability benefits for the first three months of 1973 is AF-FIRMED.