Shirley COATES, on Behalf of Robert COATES, Plaintiff–Appellant,

v.

Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant–Appellee.

No. 87–1484.

United States Court of Appeals, Seventh Circuit.

Argued April 26, 1988.

Decided May 4, 1989.

98

Bob L. Perica, East Alton, Ill., for plaintiff-appellant.

Ted K. Yasada, Dept. of Health & Human Services, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, COFFEY and MANION, Circuit Judges.

MANION, Circuit Judge.

Shirley Coates seeks judicial review of the Appeals Council's determination that her successful 1984 claim for widow's benefits on behalf of her husband's disability was a new claim rather than a reopening of his unsuccessful application in 1973. The magistrate dismissed the action for lack of jurisdiction. We affirm.

## I.

### Background

From 1952 to 1971, Robert Coates worked as an unskilled laborer in a munitions factory. On November 30, 1971, he was hospitalized because he was suffering from a general sense of weakness and dizzy spells. He was diagnosed as having high blood pressure and diabetes. Sometime thereafter, Mr. Coates was laid off from his job, but the record suggests that this may have been due to the closing of the factory. On September 19, 1973, Mr. Coates filed an application for disability benefits, claiming that his condition of high blood pressure and diabetes was disabling.

The State Disability Determination Service ("DDS") reviewed Mr. Coates' application and pertinent medical evidence, which contained the 1971 examination report by Dr. Beatty, who treated Mr. Coates while he was hospitalized. Dr. Beatty specifically diagnosed that the patient suffered from hypertension and syncope secondary to diabetes mellitus.[1] However, he noted that Mr. Coates' condition improved once he started on insulin. The record also contained an October 30, 1973 report of a telephone conference between the DDS disability examiner and Dr. Wood, Mr. Coates' personal physician. Dr. Wood confirmed that Mr. Coates had hypertension and diabetes. The disability examiner recorded the following conclusion from his discussion with Dr. Wood:

> It is doubtful if this man can work full-time at his usual occupation. It is doubtful that he could walk and stand for six to eight hours per day. He probably could not sit for six to eight hours per day because of nervousness. He could lift and carry up to ten pounds occasionally.

Based on the foregoing evidence, the DDS concluded that Mr. Coates' condition was not disabling and denied his claim for benefits.

Mr. Coates filed a request for reconsideration, which was denied on March 21, 1974. By that time, his medical record was supplemented with a report taken on March 4, 1974, when Mr. Coates went to see Dr. Wood because of chest pains and respiratory distress. In this report, Dr. Wood reaffirmed Mr. Coates' history of hypertension and diabetes mellitus. Dr. Wood's working diagnosis was that his patient may have had mild congestive heart failure and he was suffering from chest pains associated with severe respiratory distress. Dr. Wood also found that Mr. Coates had Grade II atherosclerotic retinopathy.[2] Additionally, Dr. Wood interpreted an X-ray report taken March 5, 1974, to evidence signs that Mr. Coates may also have been suffering from minimal pulmonary emphysema and fibrosis.[3] Nonetheless, after re-

---

1. Syncope is defined as the sudden loss of consciousness and may include the sensation that loss of consciousness is imminent. Berkow, ed., *The Merck Manual of Diagnosis and Therapy*, 4th ed., 400 (1982).

2. Atherosclerosis refers to a condition in which the inner layers of the artery walls thicken due to development of fatty deposits. *Stedman's Medical Dictionary*, 5th Ed., 136 (1982).

3. Pulmonary fibrosis is scar tissue that develops in the lungs, and pulmonary emphysema is

viewing the record, including Dr. Wood's March 4 report and a March 5 X-ray, the DDS came to the conclusion that the applicant's condition was not disabling. The medical examiner stated that:

> The applicant is restricted only by his own subjective complaints of weakness and tiredness. The objective medical findings in file do not demonstrate either of his impairments whether considered singly or in combination to be of such severity as to warrant the finding of a disability. Accordingly, the application for benefits is denied.

Mr. Coates did not seek to appeal this determination further, nor did he file any other claims for benefits. Accordingly, the DDS's March 21, 1974, determination became the final decision for the Secretary of Health and Human Services ("Secretary"). Mr. Coates' insured status expired on June 30, 1975.

On April 19, 1983, Mr. Coates died of a heart attack at the age of 56. Soon thereafter, Shirley Coates filed a claim for widow's benefits on the basis of her late husband's earning record. She sought a determination that he was disabled as of 1971 by diabetes, high blood pressure, hypertension, water retention, and strokes. She claimed that he remained disabled up to the time of his death on April 18, 1983. After the DDS denied her initial application and request for reconsideration, Mrs. Coates moved for a hearing before an Administrative Law Judge ("ALJ"). Mrs. Coates was represented by counsel at the February 13, 1984, hearing that followed. During his opening statements, Mrs. Coates' counsel asked the ALJ to "consider this somewhat of an open case." The ALJ then accepted evidence and heard the testimony of Mrs. Coates and her son. This testimony revealed that sometime after 1974, Mr. Coates' condition worsened considerably, requiring the constant attention of his wife

or son. After 1974, Mr. Coates was not able to walk without assistance. He was largely confined to his bed and had to use a bedpan. Around 1982, he suffered from a number of strokes, one of which left him partially paralyzed in his face and which caused him to slur his speech, and another which left him without the use of his left arm and hand. In spite of these developments, however, Mr. Coates refused to see a doctor. Thus the 1984 autopsy report constituted the only additional medical evidence in Mr. Coates' record since March of 1974. This report revealed that at the time of his death, Mr. Coates suffered from complete heart block, refractory ventricle fibrillation,[4] cardiopulmonary arrest secondary to myocardial infarction,[5] diabetes mellitus, hypertension and a history of prior strokes.

In his subsequent July 11, 1984, opinion and order, the ALJ thoroughly reviewed this testimony and medical evidence. In addition to the examination of the medical evidence scrutinized by the DDS in 1974, the ALJ evaluated the medical reports made immediately before and at the time of Mr. Coates' death. Also he heard detailed testimony from Mrs. Coates and their son regarding Mr. Coates' worsening condition between 1974 and his death in 1983. The ALJ concluded that Robert Coates was disabled for the purposes of benefits under the Act. He determined that March 4, 1974, was the onset date for the disability since Mr. Coates was, at that time, "significantly limited in his ability to perform basic work related activities due to a combination of medically determinable impairments which resulted in his death in April 1983." Based on this determination, the ALJ concluded that Mrs. Coates was entitled to widow's benefits "based on Robert Coates' period of disability commencing on March 4, 1974. The disability benefits terminate

---

characterized by destruction of the bronchiole walls and reduction in their number. *Stedman's Medical Dictionary*, 5th ed., 458 (1982).

**4.** Refractory ventricular fibrillation is a condition reflecting an inability of the ventricle of the heart to contract effectively. *Stedman's Medical Dictionary*, 5th ed., 527 (1982).

**5.** Myocardial infarction refers to damage and death of an area around the heart muscle due to an interruption of the blood supply to the area. Berkow, ed., *The Merck Manual of Diagnosis and Therapy*, 4th ed., 494 (1982).

with the close of March 1983, the month before the month in which Robert Coates died."

On October 2, 1984, Mrs. Coates received an Award Certificate letter from the Commissioner of Social Security informing her that:

The Administrative Law Judge determined that Robert Coates' period of disability began March 4, 1974. Entitlement to benefits can begin no earlier than 12 months before the date of the application was filed. [sic] Since your application as filed April 29, 1983, entitlement to benefits begins April 1982.

This award letter from the Commissioner made clear that Mrs. Coates' request for benefits was a "new claim" for benefits and that under 20 C.F.R. § 404.621(a), her award would be limited to a period of twelve months prior to her 1983 application.[6] Mrs. Coates maintained that her petition was not a new claim but was in effect a request for a reopening of the claim Mr. Coates originally filed in September of 1973. The Appeals Council denied Mrs. Coates' request for review of the "new claim" characterization. Mrs. Coates then filed a complaint in the district court, claiming jurisdiction under 42 U.S.C. § 405(g). After the parties consented to a trial and entry of a final judgment by a magistrate pursuant to 28 U.S.C. § 636(c), the magistrate reviewed the claim and dismissed Mrs. Coates' complaint on October 31, 1984, under the authority of the Supreme Court's decision in *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). The magistrate held that § 405(g) did not provide jurisdiction to review the Secretary's decision not to "reopen" the previous application for benefits. Mrs. Coates responded to the magistrate's order by filing an unsuccessful motion for reconsideration. This timely appeal followed.

6. In pertinent part, 20 C.F.R. § 404.621(a) provides that an applicant for widow's benefits under an earnings record of a wage earner entitled to disability benefits may receive benefits for up to 12 months immediately before the month in which the application is filed.

7. 42 U.S.C. § 405(g) provides in pertinent part:

## II.

### Jurisdiction Under § 405(g)

In *Califano v. Sanders*, 430 U.S. 99, 108–09, 97 S.Ct. 980, 985–86, 51 L.Ed.2d 192 (1977), the Supreme Court held that because the Secretary may deny a request to "reopen" a prior final determination for benefits without providing a hearing, such a decision is not reviewable under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).[7] This limitation upon judicial review is applicable even where an abuse of agency discretion is alleged. *Id.; Earley v. Department of Health & Human Services*, 776 F.2d 782, 784 (8th Cir.1985). In *Sanders* the Court outlined the congressional policy choices reflected in § 405(g):

[T]he opportunity to reopen final decisions and any hearing convened to determine the propriety of such action are afforded by the Secretary's regulations and not the Social Security Act. Moreover, an interpretation that would allow a claimant judicial review simply by filing—and being denied—a petition to reopen his claim would frustrate the congressional purpose, plainly evidenced in § 205(g), to impose a 60–day limitation upon judicial review of the Secretary's final decision on the initial claim for benefits. 20 C.F.R. § 404.951 (1976). Congress' determination so to limit judicial review to the original decision denying benefits is a policy choice obviously designed to forestall repetitive or belated litigation of stale eligibility claims. Our duty, of course, is to respect that choice.

430 U.S. at 109, 97 S.Ct. at 986. In light of this limitation upon the district court's jurisdiction, we believe that the magistrate properly dismissed the present claim. Based on the plain language of the ALJ's decision, it is clear that he was not reopening Mr. Coates' 1973 application; rather he

Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain review of such decision by a civil action commenced within sixty days after the mailing of notice of such a decision or within such further time as the Secretary may allow.

merely determined that March 4, 1974, marked the appropriate onset date for her husband's disability for the purposes of Mrs. Coates' entitlement to widow's benefits. The ALJ needed to mark the beginning of the disability. Because of Mr. Coates' refusal to see a doctor, the record contains no objective medical evidence after March 4, 1974 or before June 30, 1975, the expiration date for Mr. Coates' coverage. By evaluating all testimony and other evidence covering the period since 1974, the ALJ was able to establish the onset date which fell within the insured period. But his evaluation did not constitute a reopening as Mrs. Coates now claims.

Two additional factors persuade us that the ALJ did not intend for this to be a reopening. The first is that the ALJ did not state, either explicitly or implicitly, that he was reopening the 1973 application for the purposes of awarding retroactive benefits. Although Mrs. Coates' counsel hinted at their hope that the earlier application would be reopened, the ALJ did not address this point in an otherwise thorough and well-written opinion. In point of fact, he made direct reference to the regulations which limited the scope of Mrs. Coates' award of widow's benefits to a period of twelve months. 20 C.F.R. § 404.621(a).

Mrs. Coates counters by arguing that the ALJ did, in fact, reopen the 1973 application under his discretionary powers as enunciated in the Sixth Circuit's decision in *McGowen v. Harris*, 666 F.2d 60, 65 (4th Cir.1981). We do not agree. To begin with, our reading of *McGowen* suggests that it applies to claims which are the same as previously denied claims, and thus open to the limitation of administrative res judicata. As the *McGowen* court stated:

[E]ven though the subsequent claim be the same claim for res judicata purposes, if it has nevertheless been reconsidered on the merits to any extent and at any administrative level, it is thereupon properly treated as having been, to that extent, reopened as a matter of administrative discretion under 20 C.F.R. § 404.989 (1981) (superseding 20 C.F.R. § 404.958 (1980)). In that event a final decision of the Secretary denying the claim is also subject to judicial review to the extent of the reopening, without regard to the expressed basis for the Secretary's denial.

*McGowen*, 666 F.2d at 65–66. This *McGowen* standard clearly does not apply to Mr. Coates. The reopening "as a matter of administrative discretion" under § 404.989 is limited by § 404.988(b) [8] which states that a decision may be reopened "within *four years* of the date of the notice of the initial determination if we find *good cause*, as defined in § 404.989 . . . ." Since more than four years (in fact more than nine years) had elapsed since the denial of Mr. Coates' claim, even under the *McGowen* standard, the ALJ had no authority to reopen the case. Although this court has by no means embraced *McGowen*, we did make a footnote reference to it in *Meredith v. Bowen*, 833 F.2d 650, 653 (7th Cir.1987). In *Meredith*, however, the ALJ reopened when he "discovered that the SSA had mis-

---

8. 20 C.F.R. § 404.988 provides, in pertinent part:

A determination, revised determination, decision, or revised decision may be reopened—
(a) within 12 months of the date of the notice of initial determination, for any reason;
(b) within four years of the date of the notice of initial determination if we find good cause, as defined in § 404.989, to reopen the case; or
(c) at any time if—
(1) it was obtained by fraud or similar fault;

\* \* \* \* \* \*

(8) it is wholly or partially unfavorable to a party, but only to correct clerical error or an error that appears on the face of the evidence

that was considered when the determination or decision was made.

The definition of "good cause" for reopening is provided by § 404.989:
(a) We will find that there is good cause to reopen a determination or decision if—
(1) New and material evidence is furnished;
(2) A clerical error in the computation or recomputation if benefits was made; or
(3) The evidence that was considered in making the determination or decision clearly shows that on its face that an error was made.
(b) We will not find good cause to reopen your case if the only reason for reopening is a change of legal interpretation or administrative ruling upon which the decision or determination was made.

calculated the expiration of Meredith's insured status." Section 404.988(c) permits a reopening "[a]t any time if— ... [it is] to correct clerical error or an error that appears on the face of the evidence that was considered when the determination or decision was made." *Id.* Thus, to exercise his reopening authority under § 404.988(c)(8), the ALJ reviewing Coates file must have found that the 1973 claim contained a clerical error or an error on the face of the evidence. See *Bullyan v. Heckler,* 787 F.2d 417, 420 (8th Cir.1986).

Mrs. Coates can point to no clerical error, as in *Meredith,* nor to any error on the face of the evidence which was considered when Mr. Coates was denied benefits in 1973. A *McGowen* reopening cannot extend an ALJ's discretion beyond the scope of authority granted under the regulations, since "[r]eopening is a creature of regulation." *Bolden v. Bowen,* 868 F.2d 916, 918 (7th Cir.1989).

Since the ALJ in this case did not state that the 1973 application was marred by either of these deficiencies, we conclude that he was not seeking to exercise any reopening authority. Nor do we believe that the ALJ could have done so under these circumstances. The definition of "error on the face of the evidence" provided by what is now referred to as the Program Operations Manual System (POMS) provides the following:

> A determination or decision in which there was an error on the face of the evidence on which it was based, may be reopened within 4 years of the date of the notice of the initial determination if such determination was favorable to the claimant, or at any time if the decision was unfavorable to the claimant. An error on the face of the evidence exists where, on the basis of all the evidence in the file on which the determination of decision was based and any evidence of record anywhere in SSA at the time such determination or decision was made, it is clear that the determination or decision was incorrect. "Clear" means obvious, unmistakable, certain, positive.

Social Security Administration, Program Operations Manual System, § 04010.080 (February, 1982). Beyond requiring that a determination be clearly incorrect to justify reopening at any time, the POMS goes on to state that:

> A determination or decision which was reasonable on the basis of the evidence in the file and the statute regulations, instructions, precedents, etc., existing at the time the determination or decision was made, will not be reopened merely because there is a shift in the weight of the evidence, a different inference is now drawn from the evidence ... In such cases, there is no error on the face of the evidence on which the determination or decision was based (i.e., the "record") which would permit reopening.

*Id.*

This case involves a new claim brought by a different party on the basis of different regulations. Even if the ALJ concluded that the final decision by the DDS and Mr. Coates' claim was wrong, his conclusion was based on shifting the weight of the evidence and on different inferences he might have drawn. Also, the ALJ had considerable additional evidence and hindsight available. With all of these things considered in Mrs. Coates' claim, he was able to specify that the disability onset date for the new claim would commence on March 4, 1974, which was within Mr. Coates' insured period. (Of course, if the ALJ had concluded that the onset date was after June of 1975, the expiration of Mr. Coates' insured period, Mrs. Coates could claim no benefits.)

Accordingly, we conclude that the ALJ did not reopen Mr. Coates' 1973 disability application. The magistrate's finding that this was not a reopening and that Mrs. Coates is entitled to benefits payable beginning in April, 1982, and his order dismissing the complaint is hereby

AFFIRMED.