**Kathy A. AYRAULT, Plaintiff,**

v.

**Frederico PENA, Secretary, United States Department of Transportation, et al., Defendants.**

**No. 94 C 604.**

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 13, 1994.

Phillip S. Wood, Wood & Johnson, Aurora, IL, for plaintiff.

Ramune Rita Kelecius, Asst. U.S. Atty., N.D. Ill., Chicago, IL, for defendants.

### MEMORANDUM OPINION

KOCORAS, District Judge:

This matter is before the court on cross motions for summary judgment. For the reasons set forth below, the defendants' motion is granted, and the plaintiff's motion is denied.

### BACKGROUND

The plaintiff, Kathy A. Ayrault ("Ayrault"), a former air traffic cooperative program student ("co-op student"), filed the instant law-

suit against the defendants, Frederico Pena, Secretary of the United States Department of Transportation, and Edward Phillips, Regional Administrator of the Federal Aviation Administration ("FAA"), Great Lakes Region (collectively, "the defendants"). The complaint alleges that Ayrault was unlawfully terminated from her position with the FAA, without the protections of the Civil Service Due Process Amendments, 5 U.S.C. Chapter 75, and in violation of the Fifth Amendment to the United States Constitution. Both parties have moved for summary judgment.

The plaintiff was appointed as a co-op student with the FAA on January 3, 1989. As a co-op student, she was given an excepted service [1] appointment under Schedule B [2] (5 C.F.R. § 213.3201). Co-op students become eligible for noncompetitive conversion to career or career-conditional appointments within 120 days of successful completion of their educational and work requirements. In addition, one of the requirements for eligibility for noncompetitive conversion to competitive status [3] is meeting the qualification standards of the position they will occupy after conversion.

On January 27, 1992, the plaintiff was notified by letter that she was being terminated as a co-op student effective January 31, 1992. The letter cited poor conduct on the part of the plaintiff, namely, that she had disregarded her supervisor's direction and had been argumentative with her supervisor. The letter notified the plaintiff that, if she felt her termination was the result of discrimination, the Equal Employment Opportunity Complaints Procedure with subsequent review by the Equal Employment Opportunity Commission was available to her. The plaintiff

---

1. The "excepted service" includes "all civilian positions in the executive branch of the Government which are specifically excepted from the requirements of the Civil Service Act or from the competitive service by or pursuant to statute or by the [Civil Service] Commission. . . ." Exec. Order No. 10,577, 3 C.F.R. (1954–1958), *reprinted in* 5 U.S.C. § 3301. The plaintiff's position was "excepted" pursuant to Exec. Order No. 12,015, 3 C.F.R. (1977), *reprinted as amended in* 5 U.S.C. § 3301 (1994 Supp.).

2. "Schedule B" appointments are those that are not of a confidential or policy-making nature, subject to noncompetitive examination.

3. The "competitive service" includes: (a) all executive branch positions unless specifically excepted by either statute or the Civil Service Commission; and (b) all legislative and judicial branch positions specifically made subject to civil service laws by statute, subject to interpretation by the Commission. Exec. Order No. 10,-577, § 1.2. Competitive status is "acquired by career-conditional or career appointment through open competitive examination upon satisfactory completion of a probationary period, or may be granted by statute, executive order, or the Civil Service Rules without competitive examination." *Id.*, § 1.3(c).

was not advised of any right to appeal the termination to the Merit Systems Protection Board ("MSPB"), or any other forum. At the time of her termination from the FAA, the plaintiff had 30 months of service.

The plaintiff filed a two-count complaint in federal court. Count I alleges that the defendants violated 5 U.S.C. §§ 7511–13 and implementing regulations: (b) by removing the plaintiff without the issuing of a 30–day notice of proposed termination; (2) by removing the plaintiff without affording her the right to see or review the material to be used in support of the charges; and (3) by failing to afford the plaintiff the right to reply orally or in writing or both at the agency level and prior to the agency level decision. Count II alleges that the defendants, by removing the plaintiff without affording her adequate notice of the charges and an opportunity to review and respond to the case against her, effectively denied the plaintiff of a property right without due process of law, in violation of the Fifth Amendment to the United States Constitution.

The defendants move for summary judgment on the grounds that, as a co-op student, the plaintiff does not meet the definition of "employee" under Chapter 75 and, as such, she is not entitled to any of the appeal rights available to civil service employees. Moreover, the defendants maintain that, having failed to come within the definition of employee, the plaintiff's asserted property interest in her continued employment is insufficient to trigger Fifth Amendment protections. Following the defendants' motion, the plaintiff cross-motioned for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate if the pleadings, answers to interrogatories, admissions, affidavits and other material show "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party seeking summary judgment carries the initial burden of showing that no such issue of material fact exists. Pursuant to Rule 56(c), when a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue as to any material fact and that the moving party is not entitled to judgment as a matter of law. *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511.

In making our determination, we are to draw inferences from the record in the light most favorable to the non-moving party. We are not required, however, to draw every conceivable inference, but rather, only those that are reasonable. *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987); *Bartman v. Allis–Chalmers Corp.*, 799 F.2d 311, 313 (7th Cir.1986), *cert. denied*, 479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987). The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather he must go beyond the pleadings and support his contentions with proper documentary evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir.1987).

The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. "In such a situation there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial". *Id.* at 323, 106 S.Ct. at 2552.

It is in consideration of these principles that we examine the motions before us.

## DISCUSSION

■ The Civil Service Reform Act of 1978 ("CRSA"), which includes 5 U.S.C. Chapter 75, provides a comprehensive scheme for administrative and judicial review of federal

personnel decisions. *See United States v. Fausto*, 484 U.S. 439, 448, 108 S.Ct. 668, 674, 98 L.Ed.2d 830 (1988); *Veit v. Heckler*, 746 F.2d 508, 510–11 (9th Cir.1984). Given the comprehensive rights and remedies afforded by the CRSA, the Act has been interpreted as manifesting a "clear congressional intent to permit federal court review as provided in the CSRA or not at all." *Veit*, 746 F.2d at 511. The defendant contends that neither the plaintiff nor the actions sought to be reviewed are encompassed by the CSRA, thus no basis for federal court jurisdiction exists in the present case.

■ The key to whether a jurisdictional basis in fact exists depends upon whether the plaintiff is found to be an "employee" as defined by the CRSA. The relevant section of Chapter 75 defines an "employee" as follows:

> (C) an individual in the excepted service (other than a preference eligible)—
>
> (i) who is not serving a probationary or trial period under an initial appointment pending conversion to the competitive service; or
>
> (ii) who has completed 2 years of current continuous service in the same or similar positions in an Executive agency under other than temporary appointment limited to 2 years or less.

5 U.S.C. § 7511(a)(1)(C)(i), (ii) (Supp.1994). It cannot be disputed that at the time she was terminated from her position, the plaintiff was serving a probationary period pending conversion to the competitive service. Thus, she clearly does not satisfy the requirements for an employee under § 7511(a)(1)(C)(i). Whether the plaintiff satisfies the definitional requirements of § 7511(a)(1)(C)(ii), however, presents a more difficult inquiry.

■ It is well settled that the plain language of a statute is the best evidence of its meaning and the most reliable indicator of congressional intent. *Central States, Southeast and Southwest Areas Health and Welfare Fund v. Cullum, Cos.*, 973 F.2d 1333, 1339 (7th Cir.1992). Thus, when interpreting its meaning, the court must first look to the plain meaning of the statute. *See e.g., Mere-*dith v. Bowen*, 833 F.2d 650, 654 (7th Cir. 1987). In so doing, the words of the statute are to be given their ordinary, common meaning. *Ulane v. Eastern Airlines, Inc.*, 742 F.2d 1081, 1085 (7th Cir.1984), *cert. denied*, 471 U.S. 1017, 105 S.Ct. 2023, 85 L.Ed.2d 304 (1985). Only when the statute is ambiguous should the court look to the legislative history. *Meredith*, 833 F.2d at 654. Thus, where the language of the statute is unambiguous, the plain meaning of the statute controls.

Certainly, a plain meaning interpretation of § 7511(a)(1)(C) would seem to favor the plaintiff. Although the plaintiff clearly does not satisfy the criteria for an employee under § 7511(a)(1)(C)(i), the disjunctive wording of the statute would seem to allow the plaintiff to fit within § 7511(a)(1)(C)(ii). For it cannot be disputed that at the time of her dismissal, the plaintiff was a nonpreference eligible appointee of the excepted service who had completed over 2 years of continuous service in the same or similar position and had worked for an Executive agency under other than a temporary appointment limited to 2 years or less. Having met all of the criteria for an employee under § 7511(a)(1)(C)(ii), the plaintiff argues that she is entitled to due process protection.

The defendants, however, offer a different interpretation of § 7511(a)(1)(C)(i) and (ii), asserting that because plaintiff clearly fit within the category described in § 7511(a)(1)(C)(i), she was precluded therefore from seeking refuge under § 7511(a)(1)(C)(ii). According to the defendants, § 7511(a)(1)(C)(ii) is unavailable to the plaintiff, for the plaintiff was not in the category of positions to which the "2 years of current continuous service" test applies. In support of this proposition, the defendants point to the legislative history of the statute and to caselaw by the Merit Systems Protection Board ("MSPB") finding that Congress intended for sections 7511(a)(1)(C)(i) and (ii) to be mutually exclusive. *See Kane v. Department of the Army*, 60 M.S.P.R. 605, 610–11 (M.S.P.B. January 19, 1994) (noting legislative history indicating Congressional intent that "those individuals serving trial periods of employment under 5 U.S.C.

§ 7511(a)(1)(C)(i) were not to be afforded appeal rights under 5 U.S.C. 7511(a)(1)(C)(ii)"). *See also Taylor v. Department of the Navy*, 63 M.S.P.R. 99 (M.S.P.B. June 8, 1994) (noting legislative comments stating that the "time spent prior to conversion to the competitive service is a probationary or trial period within the meaning of 5 U.S.C. § 7511(a)(1)(C)(i), and that such employees do not gain adverse action appeal rights until they are converted into the competitive service").

 In determining which statutory interpretation to favor, we therefore confront the issue of whether an examination of the legislative history in the face of seemingly unambiguous statutory language is appropriate. From the outset, we note that dangers exist in attempting to rely too heavily on characterizations such as "disjunctive" form versus "conjunctive" form to resolve issues of statutory construction. *Kelly v. Wauconda Park Dist.*, 801 F.2d 269, 270 n. 1 (7th Cir. 1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1592, 94 L.Ed.2d 781 (1987). Also, the Supreme Court has recognized that "when aid to construction of the meaning of words, as used in [a] statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.'" *Train v. Colorado Public Interest Research Group, Inc.*, 426 U.S. 1, 10, 96 S.Ct. 1938, 1942, 48 L.Ed.2d 434 (1976) (citing *United States v. American Trucking Assns.*, 310 U.S. 534, 543–544, 60 S.Ct. 1059, 1064, 84 L.Ed. 1345 (1940)). Although the plaintiff's reading of the plain meaning of § 7511 is a fair and reasonable one, we believe that the defendants have likewise enunciated a fair and reasonable interpretation of § 7511. Because both the plaintiff and the defendants articulate reasonable but conflicting interpretations of the plain meaning of § 7511, we cannot maintain, therefore, that the statute is unambiguous. *See Kelly*, 801 F.2d at 271. As such, an examination of the legislative history becomes necessary to guide our interpretation. In this case, the legislative history sheds considerable light on the question before the court.

The 1991 Amendments to Chapter 75 extended to excepted service employees certain due process rights which had previously been reserved for employees in the competitive service. In explaining the coverage and application of the 1991 Amendments, Senator Pryor offered the following statements:

The bill … amends section 7511 … to extend procedural protections to certain employees in the excepted service who have completed 2 years of current continuous service in an Executive agency.… The Office of Personnel Management originally opposed H.R. 3086. However, after reviewing their position, OPM proposed changes to the bill which would eliminate its objections. OPM recommended that there should be a 2–year waiting period before excepted service personnel would receive the procedural protections; *that excepted service personnel in probationary or trial positions should not be eligible for the protections.… The subcommittee has agreed to accept these suggestions.* The 2–year waiting period [for] excepted service personnel will ensure that the agency can fully judge an employee's performance and yet vest these employees with important job protections. The exclusion for probationary or trial positions is intended to address specific job situations. Presidential management interns and veterans readjustment appointees currently serve for a 2–year probationary period. Under H.R. 3086, for the 2 years those employees spend as excepted service, they will not be eligible for procedural protections. However, immediately upon their conversion to the competitive service, the employee will be eligible for appeal rights without having to wait another year. *The probationary exclusion will cover situations such as students in certain cooperative education programs. These students can serve in the excepted service for 4 years during their schooling. Again, if converted to the competitive service, appeal rights will be immediately available.*

101st Cong. 2d Sess. (July 10, 1990), 136 Cong.Rec. §§ 11134–35 (July 30, 1990) (emphasis added). The legislative history clearly favors an interpretation more likened to the defendants.

As the Senator's comments signify, when enacting the 1991 Amendments to Chapter 75, Congress intended for there to be two distinct categories of excepted service employees dealt with in Section 7511(a)(1)(C)(i) and (ii): 1) those serving a probationary period pending conversion to the competitive service (e.g., co-op students) and 2) those not serving in a position pending conversion to the competitive service. Because the plaintiff was, as a co-op student, serving a probationary period and had not yet been converted to the competitive service at the time of her termination, the plaintiff plainly falls within the first category. As the legislative history indicates, those falling within this probationary exclusion category do not become eligible for appeal rights until they are converted. Likewise, as a member of the first category, the plaintiff cannot be permitted to seek solace in the second category, which, as the legislative history indicates, was intended to exclude those, who, like the plaintiff, held probationary positions.

As a matter of law, therefore, we find that the plaintiff was not an employee under 5 U.S.C. § 7511(a)(1)(C)(i) or (ii), and as such, was not entitled to the due process protections afforded by employee status. In that the plaintiff was not an employee, the plaintiff's asserted property interest in her continued employment with the FAA must likewise fail. There being no material issues of fact in dispute, summary judgment is granted to the defendants. The plaintiff's cross motion for summary judgment is denied.

## CONCLUSION

For the reasons stated above, the defendants' motion for summary judgment is granted. The plaintiff's motion is denied.