[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15769
Non-Argument Calendar
_____

D.C. Docket No. 9:12-cv-80941-FJL

DOROTHY MARKUSKE,

Plaintiff-Appellant,

versus

COMMISSIONER of SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 17, 2014)

Before CARNES, Chief Judge, TJOFLAT and JORDAN, Circuit Judges.

PER CURIAM:

Dorothy Markuske appeals the district court's decision affirming the denial of her application for disability insurance benefits.  She contends that the Administrative Law Judge (ALJ) erred by failing to:  (1) give proper deference to her treating physician's opinion, (2) credit her subjective complaints about her pain, and (3) provide substantial evidence that there were significant jobs in the national economy available to someone in her position.

I.

Markuske filed an application in July 2009 for disability insurance benefits under the Social Security Act.  See 42 U.S.C. § 423.  Markuske had worked as a computer programmer from 1984 to 2004, but quit because pain and numbness in her hands and arms prevented her from concentrating on her coding.  She claimed that, beginning in January 2009, she was disabled due to carpal tunnel syndrome in both hands, ulnar nerve neuritis, cubital tunnel syndrome, median neuropathy, tendonopathy of the distal triceps tendon, a cervical disc protrusion, osteoarthritis, and muscle spasms.  The Social Security Administration denied her initial application and her request for reconsideration.  Markuske then sought a hearing before an ALJ, which was held on May 18, 2011.

The ALJ applied the established five-step analysis for determining eligibility for disability insurance benefits.  See Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011); 20 C.F.R. § 404.1520 (2013).  The ALJ found as

2

follows:  (1) Markuske had not engaged in substantial gainful activity from her alleged onset date of January 21, 2009, through December 31, 2009, which was her date last insured.[1]  (2) Markuske had severe impairments consisting of depression, anxiety, specific phobia (situational), fibromyalgia, and carpal tunnel syndrome. (3) Those impairments did not meet or equal one of the Commissioner's listings of impairment, whether considered singly or in combination.  (4) Markuske retained the residual functional capacity (RFC) to perform a reduced range of light work but was unable to perform her past relevant work.

In the fifth and final step, the burden of proof shifts to the Commissioner to prove that there is a significant number of jobs in the national economy that the claimant is capable of performing.  Doughty v. Apfel, 245 F.3d 1274, 1278 & n.2 (11th Cir. 2001).  The ALJ therefore elicited testimony from a vocational expert (VE).  In her first hypothetical question, the ALJ asked the VE if a person of Markuske's age, education, and work experience could perform certain jobs existing in the national economy if she were limited to:  (1) performing light work; (2) never climbing ladders, ropes, or scaffolds; (3) occasionally climbing stairs and ramps; (4) occasionally balancing, stooping, kneeling, crouching, and crawling; (5) frequently performing fine and gross manipulations with her dominant hand; and

---

[1] The ALJ determined that Markuske had "acquired sufficient quarters of coverage to remain insured through December 31, 2009" but no further.  See generally 20 C.F.R. § 404.101 (2013). Markuske does not dispute that determination.

3

(6) receiving only simple instructions and procedures.  The VE answered that there was sufficient work available to such a person, including as a housekeeper and a sales attendant.  The ALJ then asked a second hypothetical question that further limited the hypothetical individual to only occasional fine and gross manipulation with her dominant hand.  The VE responded that there would still be sufficient work available, including as a furniture rental consultant and a children's attendant.  Finally, the ALJ changed the limitation on the hypothetical individual's dominant hand one more time, asking what jobs would be available if the individual had "limited right-hand dominant fingering."  The VE answered that "[a]ll light jobs" would be available to such an individual, including housekeeper, sales attendant, furniture rental consultant, and children's attendant.  Based on the VE's testimony, the ALJ determined that Markuske had sufficient work opportunities and therefore was not entitled to disability insurance benefits.

Markuske requested review by the Social Security Appeals Council and had her request denied in July 2012.  She then filed suit in district court, seeking judicial review of the Commissioner's decision under 42 U.S.C. § 405(g).  The district court granted summary judgment in favor of the Commissioner in November 2013.  This is Markuske's appeal.

## II.

4

We review de novo the district court's decision in a Social Security case, applying the same standards as the district court. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1260 (11th Cir. 2007); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). That means we review de novo the Commissioner's legal conclusions, but review factual findings only to determine if "substantial evidence" supports them. Ingram v, 496 F.3d at 1260 (quotation marks omitted). On the evidentiary continuum, substantial evidence falls in between a scintilla of evidence and a preponderance of the evidence. Miles, 84 F.3d at 1400. Evidence is "substantial" if a reasonable person could accept that it adequately supports a conclusion. Id.

## A.

Markuske contends that the ALJ's RFC assessment should have included the limitations identified by her treating neurologist, Dr. Qin Gu, in a medical source statement form.[2] The opinion of a treating physician "is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis." Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991). Good cause exists if, among other things, the ALJ "clearly articulates" why the "evidence supported a contrary finding." Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004).

---

[2] The medical source statement form is a standardized questionnaire used to ascertain a physician's opinion on the claimant's physical or mental limitations. See, e.g., Cox v. Barnhart, 345 F.3d 606, 610 (8th Cir. 2003); 20 C.F.R. § 404.1513(b)(6) (2013).

5

In filling out the form, Dr. Gu gave answers that placed severe limitations on Markuske's ability to work. For example, he indicated that Markuske's impairments would prevent her from: lifting objects on more than an occasional basis, standing or walking for more than two hours each workday, and sitting for more than two hours each workday. Dr. Gu also estimated that Markuske's impairments would cause her to miss more than four workdays per month. Every time the form asked Dr. Gu to identify the medical findings supporting his opinion, he answered that he based his opinion on the "chief complaints" he heard from Markuske.

The ALJ gave Dr. Gu's assessment "little weight" because it was "not supported by evidence in the record." First, the ALJ cited Dr. Gu's own treatment notes, which indicated that an MRI showed that Markuske had "only a minimal disc protrusion and mild degenerative disc disease of the cervical spine" and that medication had "stabilized" her neck pain. Second, the ALJ cited Markuske's "self-report that her medications were effective in relieving her pain symptoms." For example, her chiropractor's treatment notes show that, after two months of chiropractic treatment and taking Aleve, Markuske reported a dramatic improvement in her back and neck pain. Her neck pain went from a seven on a ten-point scale to a four, and her back pain went from a four to a two. And in the "Pain Report" that Markuske included with her disability application, she

6

acknowledged that Zanaflex helped relieve her pain symptoms. Finally, the ALJ noted that the doctors who examined Markuske's back reported only "minimal findings of tenderness of the lumbar and sacral regions."

The ALJ provided a clear articulation of why the evidence undermined Dr. Gu's opinion on the medical source statement form and thus established good cause. See Edwards, 937 F.2d at 583. The contradictory treatment notes from Dr. Gu, statements from Markuske, and clinical observations all supported the ALJ's finding that Dr. Gu's answers on the medical source statement form were exaggerations of Markuske's limitations. See Phillip, 357 F.3d at 1241 (holding that the evidence supported the ALJ's contrary finding where the treating physician was contradicted by his previous treatment notes and the claimant's admissions about her activities). The ALJ therefore did not err by giving the form little weight.[3]

B.

---

[3] We also note that the record provides an additional ground for the ALJ's decision. "A treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (quotation marks omitted). Thus, an ALJ may discount a treating physician's opinion where it "appears to be based primarily on [the claimant's] subjective complaints of pain." Id. That is the case with Dr. Gu's opinion. On the medical source statement form, Dr. Gu confirmed that all of his opinions on Markuske's limitations were based on her "chief complaints." Chief complaint is a medical term of art for the patient's subjective description of the ailment for which she is seeking medical treatment. So Dr. Gu's answers on the form were based on Markuske's subjective complaints, not objective medical evidence that Dr. Gu gleaned through observation or testing.

Markuske also contends that the ALJ failed to properly credit her subjective complaints of pain and limitations.  A claimant can establish a disability through personal testimony about pain or other symptoms.  But the claimant must support that testimony by also meeting two parts of a three-part showing:  "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."  Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).  If the claimant satisfies that three-part test, the ALJ cannot discredit the claimant's testimony unless the ALJ "articulate[s] explicit and adequate reasons for doing so."  Id.

At the hearing before the ALJ, Markuske testified that she had "constant pain" in her hands and neck.  She also described experiencing a "shooting pain . . . that goes from my neck down my arms."  She explained that the neck pain also led to the headaches that prevented her from continuing to work as a computer programmer.  Finally, she said that she suffered pain in her lower back and hips if she sat or stood too long.

The ALJ concluded that Markuske's subjective complaints of pain were not credible to the extent that they were inconsistent with the RFC determination that the ALJ had made.  The ALJ justified that conclusion based on her finding that "the medical evidence reflects only minimal to mild medical findings for

8

impairments of the back, neck and elbow."  First, the ALJ addressed Markuske's neck pain, noting that the same grounds for discounting Dr. Gu's medical source statement form applied to Markuske's complaints.  Next, the ALJ addressed Markuske's back pain.  The ALJ pointed out that examining physicians noted only "minimal findings of tenderness of the lumbar and sacral regions" and "observed [her] sitting comfortably and having no difficulty getting out of a seated position."  Finally, the ALJ addressed Markuske's carpal tunnel syndrome.  The ALJ noted that nerve conduction studies showed that Markuske's elbow pain had improved, culminating in Dr. Gu's March 2009 study concluding that she had "[b]asically normal nerve conduction."  The ALJ also cited Dr. Gu's January 2009 examination notes, in which he found that Markuske's arms had "5/5 muscle strength, normal muscle tone, and normal range of motion of the shoulders despite tenderness and decreased strength of the right elbow and hand."

The objective medical evidence cited by the ALJ provided "adequate reasons" for her decision to partially discredit Markuske's subjective complaints.  See Wilson, 284 F.3d at 1225; see also, e.g., Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004).

C.

9

Finally, Markuske contends that the ALJ's hypothetical questions to the VE were fatally flawed because they did not include: (1) her moderate limitations in concentration, persistence, or pace; and (2) her phobia of the germs in hospitals.

As for the concentration, persistence, or pace limitations, the ALJ found that Markuske had "moderate difficulties" in maintaining attention. The ALJ qualified that finding by pointing out that Markuske reported that she had "a 'fine' ability to follow written instructions," and that a non-examining state agency consultant, Dr. Ronald Chase, had determined that she "could perform simple tasks at an acceptable pace."[4] The ALJ then incorporated those limitations in her hypothetical questions to the VE by specifying that the hypothetical individual "could understand, remember, and carry out simple instructions and procedures, . . . may show occasional difficulty with more complex tasks, [and] could sustain task and perform an acceptable pace." The ALJ's hypothetical question thus included the limitations supported by the medical evidence, which is all that is necessary. See Meredith v. Bowen, 833 F.2d 650, 654 (7th Cir. 1987) ("All that is required is that the hypothetical question be supported by the medical evidence in the record."); cf. Winschel, 631 F.3d at 1180–81 (indicating that an ALJ's hypothetical question is proper if it matches the limitations specified by the medical evidence). Markuske

---

[4] In full, Dr. Chase determined that Markuske "has the capacity to understand, remember and carry out simple instructions and procedures, and make appropriate decisions. [She] may show occasional difficulty with more complex tasks as a result of symptoms. [She] is able to sustain simple tasks and perform at an acceptable pace."

10

does not identify any other limitations in concentration, persistence, or pace that were supported by medical evidence and omitted by the ALJ.

As for Markuske's phobia about germs in hospitals, none of the jobs identified by the VE were limited to hospitals. Most of them — housekeeper, furniture rental consultant, and children's attendant — by definition involve work outside of a hospital setting. So even if we assume that the ALJ erred by omitting a limitation that addressed Markuske's phobia of hospitals, that limitation would not have changed the VE's answer or the ALJ's legal conclusion. The alleged error was therefore harmless. See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (holding that a mistake by the ALJ that does not affect her ultimate conclusion is harmless error).

**AFFIRMED.**

11