Francisco PEREZ TORRES,
Plaintiff, Appellant,

v.

SECRETARY OF HEALTH AND HU-
MAN SERVICES, Defendant,
Appellee.

No. 89–1116.

United States Court of Appeals,
First Circuit.

Submitted June 9, 1989.

Decided Sept. 15, 1989.

Ivan O. Gonzalez Cruz, Juan A. Hernan-
dez Rivera, Bayamon, P.R., Angel L. Cin-
tron Carrasquillo, and William Dominguez
Torres, Caguas, P.R., on brief for plaintiff,
appellant.

Daniel F. Lopez Romo, U.S. Atty., Jose
F. Blanco, Asst. U.S. Atty., Hato Rey, P.R.,
and Robert M. Peckrill, Asst. Regional
Counsel, Dept. of Health & Human Servic-
es, on brief for defendant, appellee.

Before BOWNES, TORRUELLA, and
SELYA, Circuit Judges.

PER CURIAM.

This is an appeal from the denial of so-
cial security disability benefits. The dis-
trict court found that substantial evidence
supported the Secretary's decision, at step
five of the sequential evaluation process,
that the claimant, Francisco Perez, retained
the functional capacity to perform the full
range of sedentary work. We affirm.

Perez applied for benefits in March 1986
alleging a disabling leg condition and ar-
thritis. In subsequent submissions, Perez
also alleged acute lower back pain and an
emotional condition. At the July 1987
hearing Perez testified that he had worked

as a salesman in the men's clothing department of Sears, Roebuck and Co. for sixteen years until December 1985. Earlier problems with the nerves and tendons of both feet had necessitated foot surgery in 1984. After about seven months of recuperation and therapy, he had returned to Sears for another year before stopping work due to foot pain and leg cramps which prevented him from walking around and standing. He also complained that he could no longer bend and carry, lift or move the merchandise for display. He described his difficulty in walking, the inability to walk or stand for long periods, sitting for long periods was also compromised due to back and neck pain from an automobile accident injury suffered after the operation on his feet. Perez stated that medication relieved but did not eliminate the pain caused by both conditions.

After leaving his job, Perez had a second operation on his left foot in January 1986. In August 1986 he began seeing a psychiatrist, Dr. Rivera Polanco, on a monthly basis for insecurity, nervousness, violent reactiveness and problems at home. His daily activities included watching television and reading the newspapers, limited driving due to leg numbness, and rare social contacts except for seeing cock fights. Perez has a twelfth-grade education and was 46 years old at the time of the hearing.

The medical evidence submitted by Perez falls into two categories: hospitals and State Insurance Fund (SIF) records for the two-year period from May 1984 to April 1986, and reports from four treating and evaluating physicians.

Hospital records document the two foot surgeries in 1984 and 1986. His admitting diagnosis in 1984 was bilateral tarsal tunnel syndrome and hypertension. Upon continued complaints of left foot pain, Perez was admitted for treatment of hallux valgus and underwent bunion and bunionette excision in January 1986. His prognosis was good upon discharge. These records also show an emergency room visit in May 1985 after a motor vehicle accident. A cervical spine x-ray performed at that time revealed degenerative spondylosis at C4

and C5 vertebrae but no fracture. An April 1986 lumbar spine x-ray was read to show degenerative joint disease. The last hospital report of April 1986 notes claimant's complaints of left foot and low back pain for which medication was prescribed. Concurrently, Perez was seen at the SIF for a six-month period from October 1985 to April 1986 and, according to his statements, thereafter for the purpose of receiving medication.

Dr. Mendez, a rheumatologist, submitted an August 1986 evaluation which indicated that he had seen Perez once in April 1984 and had referred him for possible foot surgery at that time. Perez' chief complaints in 1986 were severe pain in both legs and feet which persisted despite rest, physical therapy and medication. At the examination, Perez walked with a stiff, uncertain gait. His mental status was found to be alert, of normal intellect, well-orientated, able to concentrate and with adequate recent and remote memory. Based upon an April 1986 x-ray of the lumbar spine, an electromyograph (E.M.G.) and nerve conduction studies of the lower extremities, Mendez' final diagnosis was: 1) radiculopathy, left leg, S1 by E.M.G., 2) degenerative joint disease of the lumbar spine and 3) status post tarsal tunnel syndrome. Regarding treatment for the back condition, Mendez' records that Perez has been advised to sleep on a firm bed, to promote self-care and to undertake physical therapy. Without comment as to the efficacy of any modality, Mendez also notes that the claimant had been treated with muscle relaxants, analgesics and tranquilizers. Mendez' assessment of Perez' functional capacity was that he could not stand, walk or sit for long periods of time and was unable to carry even small loads. The prognosis was poor.

In June 1986 Dr. Llompart evaluated Perez who complained of low back pain, pain in both feet and weakness in both ankles. Dr. Llompart's orthopedic exam records that Perez walked with a mild degree of low back protection and showed some midline back tenderness, but was otherwise essentially normal. X-rays taken of the lumbar spine, right ankle and left foot

showed slight spurring. Dr. Llompart assessed Perez' present condition: he should avoid activities that require more than minimal standing or walking; he should not carry or lift more than mild weights; he should climb stairs or bend his back only occasionally.

In September 1987 the claimant was evaluated by Dr. Fontanez, a neurosurgeon. Perez' chief complaints were pain in both feet, especially the left lower extremity, lumbar pain and difficulty in waist movements. Dr. Fontanez' exam noted lumbar muscle spasm and tenderness to palpitation, reduced reflex and muscle tone of the left leg and weak hand grasps. In summary, Fontanez diagnosed: myositis, radiculopathy, lumbar spondyloarthritis, status post tarsal tunnel release surgery and chronic benign pain. He assessed these conditions to impose a permanent disability to engage in any type of gainful activity.

In August 1986 Perez began seeing Dr. Rivera, a psychiatrist, who completed two mental impairment evidence reports indicating fifteen visits through July 1987. Perez' chief complaints were feeling anxious, uneasy and unable to sleep well. Dr. Rivera noted an inability to relax, anxiety, recurrent suicidal ideation, a depressed affect, some disorientation, and diminished memory, intellectual function judgment, insight and self-esteem. The diagnosis was severe dysthymic disorder and medication was prescribed. Dr. Rivera noted, however, that Perez did not tolerate medication well, was intensely preoccupied with staying invalid in his two legs and should continue to put muscle tone on both legs. Regarding his ability to function, Rivera found that Perez could not adapt to work stress or concentrate adequately to perform productive labor, that he had difficulty with interpersonal relations and often became irritable, hostile and tearful.

The agency sent Perez to three consulting physicians. Dr. Lugo performed a psychiatric evaluation in October 1986 and offered a clinical diagnosis of dysthymic disorder—moderate depression, for which Perez had received medication with no reported secondary effects. The mental examination revealed logical, coherent and relevant thought content, good contact with reality, adequate mental process, but slight to moderate psychomotor retardation. Perez was found to be oriented in three spheres, with good memory and the ability to concentrate without distraction. His insight, judgment and intellectual functions were intact. Dr. Lugo noted, however, that Perez' physical condition, to the extent that it worsened, complicated the prognosis which he characterized as very dismal. He recommended neurological and vascular examinations.

Perez was then seen by an agency consulting neurologist, Dr. Garayalde–Cotroneo. Perez' chief complaint was back pain with continuing foot pain, difficulty walking and bending forward. Perez reported taking no medications. The neurologist noted that Perez walked slowly and with hesitation. The examination indicated difficulty with toe and heel walking, diminished sensation in both legs, and some limitation in bending forward, but was otherwise normal, including no indication of back muscle spasm. X-rays showed moderately advanced spondyloarthritic changes along the cervical spine and similar but minimal changes along the lumbar spine. The diagnostic impression was: status post tarsal tunnel release surgery with no objective evidence of active radiculopathy, myelopathy or myositis. An orthopedic exam was advised.

Finally, Perez was seen by Dr. Ulloa who performed another consulting neurological evaluation in December 1986. Perez complained of daily mild cervical and lower back pain which was relieved by medication. The exam revealed no neck or muscle spasm. Nerve and motor systems were normal. A diminished sensation of the left leg was found as well as a limping gait. Perez' mental status was unremarkable except for the notation of multiple somatic complaints. Dr. Ulloa's impression was arthritis (gout by history), bilateral tarsal tunnel operation, and no evidence of active radiculopathy.

The Secretary also submitted medical opinions from non-examining agency physicians. A December 1986 report compared

the treating and consulting psychiatrist evaluations and, after completing a psychiatric review technique form (PRTF), found the claimant's mental condition to be not severe. Similarly, in January 1987 a non-examining agency neurologist assessed Perez' neurologic condition as slight.

The ALJ evaluated the evidence and found that the:

(c)laimant's original and main problem is musculoskeletal, namely, status post bilateral tarsal tunnel syndrome, degenerative joint disease of lumbar spine and left S1 radiculopathy. These conditions, when combined, are significant and impose limitations in claimant's capacity to do basic work related activity such as performing more than sedentary activities. Claimant has also a recent emotional component of slight nature, imposing minimal limitations in claimant's capacity to do sedentary activities.

App. at 6. The ALJ considered Perez' complaints of severe pain credible only to the extent of precluding prolonged walking and standing, and discounted, by implication, the back pain complaints. The mental complaints were found not credible to the extent claimed in light of all the medical evidence. *Id.* at 8. The ALJ's PRTF rated the mental condition as non-severe. Taking into account the exertional limitation, the ALJ found that Perez could do the full-range of sedentary work or a limited range of light work. Without further discussing light work, the ALJ made a finding that Perez' capacity for the full-range of sedentary work had not been significantly compromised by his additional nonexertional limitations. *Id.* at 9. Using the Medical Vocational Guidelines of Appendix 2 to Subpart P of Part 404, 20 C.F.R., (the grid), as a framework, the claimant was found not disabled.

On appeal, the claimant agrees with the conclusion that he cannot return to his prior job and can perform only a sedentary level of exertion. Perez disagrees that his mental impairment is mild. He contends that his mental condition, taken together with his pain, significantly compromises his ability to perform the full range of seden-

tary work and that a vocational expert must testify regarding what jobs, if any, the claimant can do.

The government argues that the ALJ properly relied upon the rules of the grid (noting that although the ALJ cited the wrong rule, the correct rule would also direct a finding of non-disability), and that the evidence supported the finding that the claimant's nonexertional impairments were not significant enough to diminish Perez' ability to perform a broad range of unskilled sedentary work. We agree.

■ With respect to Perez' pain complaints caused by the foot and back conditions, we note that, aside from the hospitalizations and related records of surgery and recuperation, Perez saw Drs. Mendez, Llompart, and Fontanez four times between April 1984 and September 1986 primarily for evaluation rather than treatment. At the hearing, ten months later in July 1987, Perez testified that he was then being treated by Dr. Rivera, a psychiatrist, and that he had received physiotherapy from Dr. Flores Vilar in the past year. However, the only report submitted by that doctor was an April 1986 electromyograph examination of the lower extremities. While Perez also testified that his medication helped the pain, a consulting neurologist in November 1986 noted the claimant reported that he was taking no medication at that time.

Perez' treating psychiatrist found a severe dysthymic disorder. The agency consulting psychiatrist diagnosed dysthymic disorder-moderate depression. Both doctors related the mental condition to the claimant's underlying physical complaints. Dr. Rivera, the treating psychiatrist, found Perez to be absorbed with remaining an invalid and that he needed to continue to put on muscle tone in both legs. According to the American Psychiatric Association, a dysthymic disorder is a chronic mood disturbance involving either a depressed state or a loss of interest or pleasure in almost all usual activities and pastimes. DSM–III, § 300.40, 220–3 (3d. ed. 1980). It is a less severe condition than a major depressive episode and occupational impairment is

usually mild to moderate because of the chronic, rather than severe nature of the syndrome. *Id.* at 221. While the mental impairment component here presents a closer question, based upon all the evidence of mental impairment, including positive, albeit brief mental status assessments by treating physician Mendez and consultant Ulloa, we find that substantial evidence supports the conclusion that Perez' mental condition was mild.

The claimant argues that the ALJ was prejudiced with regard to the mental impairment claim because of unfair comments made in the decision regarding the timing of some of Perez' filings and medical consultations. The ALJ stated that the claimant had exaggerated his symptoms and that his treating psychiatrist, out of kindness, rendered the opinion he did. Although the ALJ misread the record in stating that the claimant had never alleged a mental condition—the claimant alleged an emotional condition in August 1986, and again in his hearing request in February 1987,—we have examined the entire record and find the error harmless.

The claimant sought *no regular* treatment for his two allegedly painful conditions, and he submitted no medical evidence of treatment for his back condition. 20 C.F.R. § 404.1513. On this record the ALJ was entitled to discount the severity of the pain complaints and conclude that the pain Perez experienced, which was amenable to medication, and his mild mental condition did not significantly diminish his ability to perform most jobs in the sedentary range. The use of the grid in this case was proper, *Borrero Lebron v. Secretary of Health & Human Services*, 747 F.2d 818, 820 (1st Cir.1984), and the AlJ was not required to call upon a vocational expert. *Gray v. Heckler*, 760 F.2d 369, 372 n. 4 (1st Cir.1985); see also, *Torres v. Secretary of Health & Human Services*, 668 F.2d 67, 69 (1st Cir.1981).

The record reasonably and adequately supports the Secretary's conclusion that the claimant's nonexertional impairments were slight and that his ability to perform the full range of sedentary work was not seriously affected.

Affirmed.