Catherine McEVERS, Plaintiff–
Appellant,

v.

Louis M. SULLIVAN, M.D., Secretary of
the Department of Health and Human
Services, Defendant–Appellee.

No. 90–3221.

United States District Court,
C.D. Illinois,
Springfield Division.

Feb. 28, 1992.

David Sutterfield, Effingham, Ill., Catherine McEvers, Jacksonville, Ill., for plaintiff-appellant.

James A. Lewis, Asst. U.S. Atty., Springfield, Ill., for defendant-appellee.

OPINION

RICHARD MILLS, District Judge:

Social Security Widow's Benefits.

When is a dead man's wife not his widow?

For social security purposes, it is when she is married to her third husband when her first husband, from whom she was never divorced, dies and she applies for benefits as the widow of her first husband

while concealing her marriage to the third husband.

Cross-motions for summary judgment.

The "widow" loses.

Judgment for Defendant.

### Facts

This case is fact-intensive. The background of this rather unusual case is lengthy, interesting and—fortunately—largely undisputed. Many of these facts are drawn from the written decisions of the Administrative Law Judge (ALJ) and the Appeals Council. The rest are drawn from elsewhere in the certified record of the proceedings below.

A. Facts from the ALJ's Decision

Appellant was born December 3, 1920.

On July 15, 1947, she married Virgil McEvers (Husband 1). In August of 1954, she filed for a divorce.

On January 7, 1955, Plaintiff married John Root (Husband 2). Plaintiff divorced Root on September 19, 1959.

On March 14, 1967, Plaintiff married Evan Parsaghian (Husband 3) "in a formal, licensed and solemnized marriage."

Virgil McEvers, Husband 1, died fully insured on March 7, 1979. Plaintiff reached age 60 on December 3, 1980 and filed for social security benefits as McEvers' widow on October 8, 1981. She was awarded benefits commencing October, 1981.

Plaintiff and Parsaghian, Husband 3, were separated in October, 1986. He died in March, 1988.

On March 5, 1988, the Social Security Administration (hereafter Administration) determined that Plaintiff had received an overpayment of $39,220.10. This determination was based on the fact that Plaintiff was married to someone else, Evan Parsaghian, when she applied for benefits as the widow of McEvers. The Administration further determined that the first possible month Plaintiff was entitled to widow's benefits was March, 1988, when Parsaghian died.

The ALJ's decision stated that Plaintiff had sought an annulment of her marriage to Parsaghian on January 25, 1988. In March, 1988, Parsaghian passed away. Plaintiff was granted an annulment of her marriage to Parsaghian on October 5, 1988, in an order that declared the marriage invalid as of March 14, 1967.

On March 16, 1988, Plaintiff claimed supplemental security benefits as the spouse of Parsaghian, from whom she was separated.

The Administration was of the opinion that, under the Illinois Marriage and Dissolution of Marriages Act, the marriage to Parsaghian, although initially invalid as a prohibited marriage, became valid in March, 1979, when Plaintiff and Parsaghian continued to cohabit after McEvers died and the impediment to Plaintiff's marriage to Parsaghian was removed.

The ALJ noted that Ill.Rev.Stat. ch. 40 ¶ 212 provides as follows:

**212. Prohibited marriages**

(a) The following marriages are prohibited:

(1) a marriage entered into prior to the dissolution of an earlier marriage of one of the parties;

. . . . .

(b) Parties to a marriage prohibited under subsection (a) of this Section who cohabit after removal of the impediment are lawfully married as of the date of the removal of the impediment.

The petition to annul Plaintiff's marriage to Parsaghian alleged fraud. The ALJ noted that under Ill.Rev.Stat. ch. 40 ¶ 301, a marriage could be annulled if a party was induced to enter into the marriage based upon a fraud involving the essentials of the marriage; however, under ¶ 302 the annulment must be sought within 90 days of the time the petitioner learns of the fraud and in no event after the death of either party to the marriage.

The ALJ concluded that the record was "replete with inconsistent and contradictory statements officially made by claimant regarding her marital status." The ALJ also concluded that Plaintiff's annul-

ment of her marriage to Parsaghian, apparently by default, six months after his death in Florida, was contrary to Illinois law and possibly fraudulent.

After considering all the evidence on the record, the ALJ determined that Plaintiff was not entitled to widow's benefits as the widow of McEvers because, at the time she filed her application for benefits, she was legally married to Parsaghian. The ALJ also determined that Plaintiff was not "without fault" in causing the overpayment and therefore recovery of the overpayment was not waived.

### B. Facts from the Appeals Council's Decision

Plaintiff, through her representative, presented two contentions to the Appeals Council.

First, Plaintiff's representative contended that the Social Security Administration was bound by the Illinois state court's order invalidating Plaintiff's marriage to Parsaghian back to the date of its inception. Therefore, according to Plaintiff's representative, she was entitled to benefits as McEvers' widow.

Second, Plaintiff's representative argued that even if Plaintiff is not entitled to benefits as the widow of McEvers, she was not at fault in causing the overpayment and allowing recovery of the overpayment would defeat the purpose of Title II of the Social Security Act and be against equity and good conscience.

Plaintiff's representative argued that Plaintiff's application for supplemental benefits on March 16, 1988 as Parsaghian's spouse and her failure to list her marriage to Parsaghian when she applied for benefits as the widow of McEvers did not show fraud because both actions were based on her knowledge at the time. Plaintiff's representative asserted that approximately two weeks before McEvers' death, McEvers Plaintiff in a telephone conversation that they were not legally divorced. Research shortly thereafter by legal counsel and Plaintiff's daughter confirmed that the divorce was never finalized. Plaintiff did not list herself as Mrs. Parsaghian when she applied for widow's benefits in 1981

"because she had been advised that she was no longer legally married to Mr. Parsaghian."

By contrast, when Plaintiff applied for benefits as Parsaghian's spouse on March 16, 1988, she had received two written notices from social security stating that her marriage to Parsaghian had become valid after McEvers' death. "Further, she only applied for supplemental benefits because she was desperate, due to Social Security stopping her widow's benefits payments."

The Appeals Council determined that Plaintiff was not entitled to benefits as the widow of McEvers and that she was not "without fault" in causing the overpayment.

The Appeals Council agreed with the ALJ's finding that Plaintiff was married to Parsaghian and thus not entitled to the benefits received from October, 1981 through February, 1988. This finding was based on Ill.Rev.Stat. ch. 40, ¶ 212.

Citing Social Security Ruling 83–37c, the Appeals Council stated that the Secretary was not bound by a state court decision unless:

> (1) an issue in a claim for social security benefits previously has been determined by a state court of competent jurisdiction;
>
> (2) the issue was genuinely contested before the state court by parties with opposing interests;
>
> (3) the issue falls within the general category of domestic relations law; and
>
> (4) the resolution by the state trial court is consistent with the law enacted by the highest court of the state.

The Appeals Council believed that the Plaintiff's order invalidating her marriage to Mr. Parsaghian did not meet the second and fourth requirements. The Appeals Council stated that the Plaintiff's "Petition for Declaration of Invalidity of Marriage" was not filed with the state court until September 16, 1988, six months after Parsaghian's death. The petition makes no mention of Parsaghian's death in March of 1988 and there is some evidence that the court was not made aware of his death

since the court's October 5, 1988 order indicates that he "resides" in Ft. Myers Beach, Florida. Based on the fact that Mr. Parsaghian was dead when the petition was filed, it is very doubtful that the issue of the marriage's validity was genuinely contested.

The Appeals Council also notes that, under Ill.Rev.Stat. ch. 40, ¶ 302, Plaintiff's petition for annulment based upon an unspecified and unsupported allegation of fraud on the part of Mr. Parsaghian had to be commenced within 90 days of the time Plaintiff gained knowledge of the fraud that purportedly made the marriage invalid under ¶ 301. From the record the Appeals Council concluded that the alleged fraud by Mr. Parsaghian was that he had been married three or four times prior to his marriage to the Plaintiff rather than the one time that he listed on the marriage license. The record, specifically a contact report made on March 31, 1987, reflects that the Plaintiff was aware of this alleged fraud by March 31, 1987. Therefore, Plaintiff's petition to invalidate the marriage was not filed within the 90–day time limit provided for in Ill.Rev.Stat. ch. 40, ¶ 302. Further, the Plaintiff stated on the marriage license that her marriage to Parsaghian would be her second marriage, whereas it was actually her third. Based on these factors, the Appeals Council did not believe that the trial court's order was consistent with the law of Illinois or would be upheld by the Illinois Supreme Court.

The Appeals Council also observed that under social security rulings 81–11c and 84–1, a marriage remains valid for social security purposes until the date of the nullifying decree.

In determining that the Plaintiff was not without fault in causing the overpayment of benefits, the Appeals Council considered the numerous inconsistent explanations offered by Plaintiff for her failure to list the Parsaghian marriage on her application for benefits as McEvers' widow as evidence that she lacked credibility. In a letter to the Administrative Law Judge dated August 5, 1989, Plaintiff, through her representative, states that she was unaware that she was not legally divorced from McEvers until his death. "Only when she became aware of this fact, did she realize that her marriage to Frank Parsaghian was not valid." The letter further states that Plaintiff could not have been expected to understand her legal status at the time she filed for benefits.

In the October 4, 1989, letter requesting review by the Appeals Council, Plaintiff's representative states:

Approximately two weeks before Virgil McEvers' death, he told Catherine in a telephone conversation from his deathbed that they had not been legally divorced. Research shortly after that, by legal counsel and Catherine's daughter Ann Marie, confirmed that the divorce was never finalized. Therefore, when Catherine filed for Virgil's widow's benefits as of Oct. 8, 1981, she had been advised by legal counsel that she was no longer legally married to Mr. Parsaghian; and because of this, she did not show herself as Mrs. Parsaghian on the forms.

The contact report dated March 31, 1987, prior to the aforementioned letters, indicates that Plaintiff stated she had not mentioned the Parsaghian marriage because she had found out that Parsaghian had been married more times than he had indicated on the marriage license and she thought that lying on the marriage license made the marriage invalid.

The Appeals Council pointed out that Plaintiff was aware that her divorce from McEvers had never been finalized when she filed for benefits on October 8, 1981. Plaintiff indicated that her only other marriage was to John Root on January 7, 1955, and that they had been divorced on September 19, 1959. She signed her name as Catherine Root. No mention was made on the application of her marriage to Parsaghian on March 14, 1967, although they continued to live together until they separated in late 1985 or early 1986. The Appeals Council observed that if Plaintiff had believed, as she claims, that her only valid marriage was to McEvers, it would not have been reasonable for Plaintiff to list her subsequent marriage to John Root

which had ended in divorce more than 20 years before she filed for benefits and at the same time make no mention of her continuing marriage to Parsaghian. After all, if Plaintiff believed that her marriage to Parsaghian was invalid because she was still married to McEvers, then the marriage to Root would have been invalid as well. The Appeals Council also believed it unlikely that the Plaintiff generally used the surname "Root" rather than "Parsaghian" since she apparently believed her marriage to Parsaghian was valid at least until March 1979. The Appeals Council concluded that the only reasonable explanation for Plaintiff's failure to list her marriage to Parsaghian when asked to provide information about all of her marriages was that she was aware or concerned that it would negatively affect her chance of receiving benefits. The Appeals Council therefore found that the overpayment was a direct result of Plaintiff's failure to provide any information on her application regarding her marriage to Parsaghian. Pursuant to 20 C.F.R. 404.507, Plaintiff was not "without fault" because the overpayment resulted from her failure to furnish information which she either knew or should have known was material.

### C. Other Facts From the Record

Some facts not explicitly reflected in the written decisions of the ALJ or the Appeals Council are also worthy of mention.

The ALJ's decision indicates that Plaintiff sought an annulment of the Parsaghian marriage on January 25, 1988 while the Appeals Council's decision indicates that her petition was not filed until September 16, 1988, some six months after Parsaghian's death. The record clarifies this apparent inconsistency. On the copy of the petition for declaration of invalidity of marriage supplied to the ALJ by Plaintiff's representative, the portion of the heading listing the court and the file date is chopped off and the second page of the petition shows that it was notarized on January 25, 1988. Elsewhere in the record of the proceedings below is a record sheet for the invalidity of marriage case. That sheet indicates that the petition was not filed until September 16, 1988. As previously noted, the order of the Circuit Court for Morgan County, Illinois, dated October 5, 1988, indicates that the defendant, Evan Parsaghian, resides in Ft. Myers Beach, Florida. There is no indication from the order that the Morgan County Circuit Court was ever apprised that the defendant was deceased.

On the issue of when Plaintiff found out that she was not legally divorced from McEvers, two additional pieces of evidence in the record deserve mention. Plaintiff's representative stated during the hearing in front of the Administrative Law Judge that the person handling Virgil McEvers' probate had all the documentation and originally discovered that Plaintiff and McEvers were not divorced. The record also includes a letter to Plaintiff from someone, apparently in the Morgan County Circuit Court Clerk's Office, dated December 5, 1955. That letter informs Plaintiff that a written decree had never been signed in her divorce case and that the presiding judge preferred not to sign the decree until Plaintiff had notice of the proposed decree. The apparent reason for the judge's hesitation is that Plaintiff's divorce to McEvers was an ugly affair involving allegations spousal abuse, adultery and desertion. The proposed decree attributed the fault to Plaintiff following her consent to immediate default and her actual failure to appear in court.

Regarding the issue of whether Plaintiff was aware of the real issue at the hearing before the ALJ, the written special determination dated October 19, 1987, states that the original determination of benefits "cannot be reopened under the rules of administrative finality unless fraud or similar fault exist." The Final Determination states that Plaintiff "knowingly made incomplete statements about her marital history and concealed information material to our determination of her entitlement to benefits. The 'D' award processed 11/16/81, may be reopened under the rules of administrative finality as similar fault exist." At the hearing before the Administrative Law Judge, the ALJ stated "this is a fraud case initiated on the basis of fraud.

This isn't just a regular fraud case where we're going to cut you off because of fraud and maybe throw you in jail" and "[t]his is a case where they couldn't reopen it but for fraud." The ALJ continued: "So, this may be a case where fraud has to be established in the first place or the government can't or they, you know, the government is right, but can't win."

Some changes in Plaintiff's position may be pertinent on the issue of whether Plaintiff was "without fault" in causing any overpayment.

Plaintiff's representative stated during the proceedings in front of the ALJ that "[Plaintiff] didn't find out until going through the probate and that sort of thing that the—that—that's the point in time when they found out that their marriage was never real—really legally divorced." Plaintiff's handwritten statement on the "Statement of Claimant or Other Person" form also indicates that it was after McEvers' death that Plaintiff learned that they were not legally divorced.

In the proceedings before this Court, Plaintiff filed a motion to supplement the record with affidavits by herself, her daughter, and a friend indicating that Plaintiff had learned from Virgil McEvers in a phone call prior to his death that their divorce was never finalized. Plaintiff's memorandum in support of her motion for summary judgment states: "It is the position of the Claimant that the Affidavits attached to its Motion herein are uncontradicted and constitute the only evidence as to the Plaintiff's knowledge of her marital status to Virgil McEvers prior to his death in March 1979 and that the District Court should therefore reverse the determination of the defendant secretary." The assertion that the affidavits are uncontradicted and the only evidence of Plaintiff's knowledge regarding her marital status prior to McEvers' death is patently false.

### Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Unquestionably, in determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). Nevertheless, the rule is also well established that the mere existence of some factual dispute will not frustrate an otherwise proper summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Thus, the "preliminary question for the judge [is] not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed." *Id.* at 251, 106 S.Ct. at 2511 (quoting *Improvement Co. v. Munson*, 14 Wall. 442, 448, 20 L.Ed. 867 (1872)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Applying this standard, the Court now turns to the case at bar.

### Arguments

Neither party seriously argues that there are any genuine issues of material fact. Plaintiff did file affidavits in the this Court in support of her contention that she learned that she had never been divorced from McEvers while McEvers was still alive. As will be seen, however, the issue is not whether there is a genuine issue of material fact as to the issues decided by the ALJ and the Appeals Council, but whether there is a genuine issue of material fact as to whether the decisions below are supported by "substantial evidence."

Both parties have argued that they should prevail on summary judgment. Their arguments may be briefly summarized as follows.

Plaintiff raises before this Court numerous issues ranging from whether the ALJ committed legal error in failing to consider Ill.Rev.Stat. ch. 40 ¶ 305, regarding putative spouses to whether Plaintiff's due

process rights were violated because the ALJ failed to inform her that in order for the Social Security Administration to recover the overpayment it had to prove that she had committed fraud or was otherwise similarly at fault in order to recover the overpayment.

The Administration argues that the Plaintiff is barred from raising a due process argument now because she did not present this argument at the administrative level and has therefore failed to exhaust her administrative remedies with respect to this issue. The Administration also argues that the Secretary's decisions that the Plaintiff received an overpayment and that recovery of the overpayment should not be waived were both supported by "substantial evidence."

*Analysis*

 A reviewing court may not consider arguments that were not presented to the administrative agency whose determination is being appealed. *McBride v. Sullivan,* 756 F.Supp. 361, 363 (N.D.Ill.1991) (*citing Hix v. Director, Office of Workers' Compensation Programs,* 824 F.2d 526, 527 (6th Cir.1987)). Because Plaintiff did not raise any issues regarding due process or Ill.Rev.Stat. ch. 40 ¶ 305 before the Appeals Council, such arguments cannot be considered now. This Court's review is limited to determining (1) whether the Secretary's decision that Plaintiff was not entitled to widow's benefits was supported by substantial evidence, and (2) whether the Secretary's determination that recovery of the overpayment should not be waived was supported by substantial evidence.

The standard of review in the district court is "whether the Secretary's decision is supported by substantial evidence." *Steward v. Bowen,* 858 F.2d 1295, 1297 (7th Cir.1988) (citation omitted). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Steward,* 858 F.2d at 1297 (*quoting Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). Substantial evidence

"is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966). The responsibility for weighing conflicting evidence belongs to the Secretary or the ALJ as the Secretary's designate. *Walker v. Bowen,* 834 F.2d 635, 640 (7th Cir.1987). In reviewing the ALJ's decision, the district court must review the entire record. After review, the Court must accept the ALJ's findings if supported by substantial evidence. *Meredith v. Bowen,* 833 F.2d 650, 653 (7th Cir.1987). The Court may not "decide the facts anew, reweigh the evidence, or substitute [its] own judgment for that of the ALJ." *Meredith,* 833 F.2d at 653 (citation omitted). Only if the ALJ's credibility finding is "patently wrong in view of the cold record" can it be overturned. *Stuckey v. Sullivan,* 881 F.2d 506, 509 (7th Cir.1989) (citation omitted).

 There is substantial evidence to support the Secretary's determination that the Plaintiff was not entitled to the benefits as the widow of McEvers. Plaintiff's representative took the position in front of the ALJ that Plaintiff did not learn that she was still married to Virgil McEvers until McEvers' estate was in probate. Plaintiff's oral and written statements prior to the ALJ's decision are consistent with this version of the events. Plaintiff's representative's letter to the Appeals Council requesting review of the ALJ's decision appears to be the first instance where Plaintiff asserts that she learned that she was still married to McEvers in a telephone conversation with him prior to his death. It was therefore quite reasonable for the ALJ to accept Plaintiff's assertions that she did not learn she was still married to McEvers until after his death. It then follows that Plaintiff's marriage to Parsaghian became valid under Ill.Rev.Stat. ch. 40, ¶ 212(b) when Plaintiff continued to cohabit with Parsaghian after the impediment to their marriage was removed by McEvers' death.

The state court order annulling Plaintiff's marriage to Parsaghian does not further her cause. The order of the state trial court fails to meet two of the criteria of social security ruling 83–37c; the fraud issue was not genuinely contested by parties with opposing interest and the trial court's resolution was inconsistent with state law. It is clear that the petition for an annulment was not filed until six months after Parsaghian was dead. It is equally clear that the petition for annulment was not commenced within ninety days of the time Plaintiff supposedly learned of the fraud. Thus, Plaintiff is outside the bounds of both time limitations of Ill.Rev.Stat. ch. 40, ¶ 302. In addition to these legal defects with the annulment itself, there is strong circumstantial evidence that the annulment was gained by committing a fraud upon the state court. The order of annulment indicates that Parsaghian "resides" in Ft. Myers Beach, Florida, and gives no indication that he is already deceased, leading this Court to strongly suspect that Plaintiff misled the state trial court on this rather significant detail.

The Administration's determination that Plaintiff was not "without fault" is also supported by substantial evidence. Plaintiff's withholding of information regarding her third marriage clearly involved information that she either knew or should have known was material. As the Appeals Council pointed out, Plaintiff's purported belief that she was still married to McEvers when he died does not explain why she would list her second marriage on her application for benefits and use the surname of her second husband while totally omitting any reference to her third husband. The changes in Plaintiff's story regarding when she learned that she was not divorced from McEvers and her obtaining of a convenient but highly questionable annulment also undermine her credibility.

### Conclusion

The Court not only finds that the decision of the Social Security Administration is supported by "substantial evidence," but that it is totally correct.

A review of the entire record leads to the inescapable conclusion that Plaintiff, Mrs. McEvers/Root/Parsaghian, committed an intentional fraud upon the Government.

Having stolen money from the Government, and ultimately the taxpayer, over an eight year period, equity and good conscience require that she repay the victims of her fraud.

*Ergo,* Plaintiff's motion for summary judgment is DENIED.

Defendant's motion for summary judgment is ALLOWED.

The Clerk's Office is DIRECTED to send a copy of this opinion to the Circuit Court of Morgan County, Illinois, for such further action as that court deems appropriate.

Case CLOSED.