12 F.3d 1101
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Debra Schmidt, Plaintiff-Appellant,
v.
Donna E. SHALALA,* Secretary of Health and Human
Services, Defendant-Appellee.
 No. 93-1037.
 United States Court of Appeals, Seventh Circuit.
 Submitted Sept. 28, 1993.
Decided Nov. 30, 1993.
 
 Before CUDAHY, RIPPLE, MANION, Circuit Judges.
 
 ORDER
 
 1
 Debra Schmidt brought this action in the Northern District of Illinois seeking review of the Secretary of Health and Human Services' ("Secretary") determination that she was not disabled and thus not entitled to disability benefits. Following cross motions for summary judgment the district court granted summary judgment to the Secretary. We affirm.
 
 I. Facts
 
 2
 On September 11, 1989, Debra Schmidt, a 36 year old woman with a high school education, applied for disability insurance and Supplemental Security Income pursuant to Secs. 216(i), 223, and 1601 et seq. of the Social Security Act, 42 U.S.C. Secs. 416(i), 423, and 1381 et. seq. Schmidt alleged that she became disabled on May 30, 1988 when she attempted to lift a 25 pound bag of pet food while working as a cashier at a mini-mart convenience store. According to Schmidt, this resulted in a lumbar disc herniation, and a pinched sciatic nerve in her right hip. Both of Schmidt's claims were administratively denied initially and again upon reconsideration. Schmidt sought review of her claim from an Administrative Law Judge (ALJ) on June 25, 1990. At this hearing, Schmidt alleged for the first time certain mental impairments which had not previously been considered by the Illinois state agency. Because of this, on July 30, 1990, the ALJ remanded her case to the Illinois Disability Determination Service (DDS) for assessment of Schmidt's mental disorders and a new reconsidered determination. On October 22, 1990, the DDS issued a revised determination, in which it again found Schmidt was not disabled. On March 22, 1991, Schmidt obtained a second hearing before the same ALJ.
 
 
 3
 At this second hearing, Schmidt testified that her condition had worsened since her last hearing before the ALJ. She stated that because of pain in her lower back and legs she cannot sit for long periods of time, and must stand up and move around in order to alleviate the pain. Schmidt testified that she had seen several doctors concerning her lower back pain. The reports from the doctors who examined her back are mised: three of the examining doctors, Dr. McGath, Dr. Perry, and Dr. Majat, reported that tests on Schmidt's lower back turned up negative. Two other doctors, Dr. Debush and Dr. Herzberger, on the other hand, found mild conditions surrounding Schmidt's lower back at the L5-S1 joints; Dr. Debush, based on a CT scan, found no disc herniation, but did find osteoarthritic changes at the L5-S1 joints, and mild changes at the L4-5 level; Dr. Herzberger, based on a lumbar MRI scan conducted some months later, found a mild disc herniation at L5-S1 on the left. Schmidt also testified that her carpal tunnel syndrome[1] had worsened, and that she had injured her left knee, which was now an additional source of pain. The medical reports revealed, however, that Dr. Lutz had examined Schmidt's right arm and concluded that her condition was mild, and could easily be remedied by surgery. Schmidt, however, declined to pursue this course of action because she is skeptical of surgery. Dr. Lutz also examined Schmidt's left knee. He did drain some fluid but beyond this he found nothing medically significant regarding her condition. Schmidt acknowledged before the ALJ that she has pending a worker's compensation claim based on her back injury. Schmidt no longer works; she spends most of her time in a mobile home she rents with her mother, making crafts, watching television, and resting.
 
 
 4
 Frank Mendrick, a vocational rehabilitation counselor, testified as a vocational expert before the ALJ at both hearings. At the first hearing, Mendrick testified in response to a hypothetical question from the ALJ that a person with Schmidt's age, education, work experience, and physical restrictions--no lifting beyond 35 pounds, no repetitious hand movements, and the need to alternately sit and stand while on the job--would be able to perform a substantial number of jobs, including a receptionist, video rental and car rental clerk. Mendrick figured that 3,000 such positions existed in Schmidt's area. At the second hearing before the ALJ Mendrick reaffirmed his initial job assessment. Mendrick acknowledged that a person with a severe mental impairment would lack sufficient mental capacity to perform the jobs he had initially listed. But Mendrick pointed out that if the mental impairment was only slight, then he would stick by his original assessment that the person would have sufficient mental and physical capacity to perform a substantial number of jobs listed in the local and national economy.
 
 
 5
 Following this second hearing, the ALJ issued his written order finding that Schmidt was not disabled. With respect to Schmidt's claim of mental impairments, the ALJ found that Schmidt did have a somatoform pain disorder[2] and a mixed personality disorder, but that neither of these mental impairments were "severe," and therefore were not disabling. Turning to Schmidt's alleged physical impairments, the ALJ found that although Schmidt had a small disc herniation in her lower back, the most significant objective tests as to that condition turned out negative; she suffered from carpal tunnel syndrome but it could only be characterized as mild; she had limitations associated with her left knee but they did not prevent her from performing substantial gainful activity. The ALJ also dismissed Schmidt's subjective complaints about pain as not credible. Although the ALJ found that Schmidt's physical limitations prevented her from returning to her previous employment, he concluded that she retained sufficient residual functional capacity to perform a substantial number of jobs existing in the national economy. Thus, the ALJ concluded that Schmidt was not disabled within the meaning of the Social Security Act and was not entitled to benefits. The Social Security Appeals Council denied review of the ALJ's decision, making it the final decision of the Secretary.
 
 
 6
 Having exhausted her administrative remedies, Schmidt next sought judicial review of the ALJ's decision in the United States District Court for the Northern District of Illinois. In its order granting summary judgment, the district court noted, and the Secretary conceded, that a number of the ALJ's findings as to Schmidt's credibility were erroneous. Schmidt v. Sullivan, No. 91 C 20370, memorandum and order at 5-7 (N.D.Ill., Nov. 25, 1992); R. 26 at 5. The district court concluded that, despite these erroneous findings, the ALJ's determination was supported by substantial evidence. Id. at 9. With respect to Schmidt's claims of alleged mental impairments, the district court noted that because Schmidt had failed to raise this issue to the Appeals Council she had waived it for judicial review. Id. at 9-10, 10 n. 3. The district court did point out in a footnote that even if the issue had not been waived, substantial evidence existed to support the ALJ's determination that Schmidt's mental impairments were not disabling. Id. at 10 n. 4. Accordingly, the district court granted summary judgment in favor of the Secretary.
 
 II. Analysis
 
 7
 We decide disability cases, as do the district courts, by reviewing the Secretary's final decision to ensure that it is supported by substantial evidence. Young v. Secretary of Health and Human Services, 957 F.2d 386, 388 (7th Cir.1992). By regulation, the Secretary has delegated his authority to make final decisions to the Appeals Council. Id. Therefore, we normally review the factual findings of the Appeals Council rather than those of the ALJ. Id. Where, as here, the Appeals Council has denied review, then the decision we review is that of the ALJ. Eads v. Secretary of DHHS, 983 F.2d 815, 817 (7th Cir.1992). Thus, the question before us is whether the ALJ's decision is supported by substantial evidence. Substantial evidence means only that amount of relevant evidence that a "reasonable mind might accept" as adequate to support a conclusion, taking into account "whatever in the record fairly detracts from its weight." Arbogast v. Bowen, 860 F.2d 1400, 1403 (7th Cir.1988).
 
 
 8
 To qualify as disabled under the Act, a claimant must be able to demonstrate that she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. Sec. 1382c(a)(3)(A). To aid in this inquiry, the Secretary has adopted the following five-step inquiry under 20 C.F.R. Sec. 404.1520(a)-(f) (1991):
 
 
 9
 (1) is the claimant presently unemployed; (2) is the claimant's impairment or combination of impairments severe; (3) does the impairment meet or exceed any of the list of specified impairments that the Secretary acknowledges to be so severe as to preclude substantial gainful activity; (4) if the impairment has not been listed by the Secretary as conclusively disabling, is the claimant unable to perform his or her former occupation; and (5) if the claimant cannot perform the past occupation, is the claimant unable to perform other work in the national economy in light of his or her age, education, and work experience. A negative conclusion at any step (except for step three) precludes a finding of disability. An affirmative answer at steps one, two, or four leads to the next step. An affirmative answer at steps three or five results in a finding of disability.
 
 
 10
 Young, 957 F.2d at 389. The claimant bears the burden of proof in steps one through four. If that burden is met, the burden shifts to the Secretary to prove that the claimant retains sufficient residual functional capacity to perform other work in the national economy. Id.; Pugh v. Bowen, 870 F.2d 1271, 1275 (7th Cir.1989).
 
 
 11
 From Schmidt's appellate brief we glean two arguments: (1) the ALJ ignored an entire line of evidence concerning her mental impairments; and (2) the ALJ made a number of erroneous findings which he then used as a basis to discredit and diminish her credibility with respect to her subjective complaints. We address each of these in turn.
 
 
 12
 A. Schmidt's Mental Impairments did not Meet or Exceed the Listing Requirements.
 
 
 13
 The Secretary has promulgated a Listing of Mental Impairments, which, if successfully shown by a claimant, presumptively establish that the claimant is disabled and thus entitled to benefits. See 20 C.F.R. Sec. 416.920a; 20 C.F.R. Part 404, Subpart P, Appendix 1, Secs. 12.00-12.08; Young, 957 F.2d at 389. For a claimant to qualify for benefits pursuant to the listing requirements, the regulations require: (1) documentation of medically determinable mental impairment (the "A" criteria), which, if met leads to (2) an assessment of its severity in terms of functional limitations it imposes on the claimant's activities (the "B" criteria). The ALJ found that Schmidt had fulfilled the A criteria of Sec. 12.07 (somatoform disorder) and Sec. 12.08 (personality disorder). The ALJ found, however, that these impairments imposed only slight restrictions upon Schmidt and therefore did not fulfill the B criteria.[3] Therefore, based on the evidence before him, the ALJ found that Schmidt's impairments did not meet or equal any of the impairments set out in the listings.
 
 
 14
 Schmidt argues that substantial evidence is lacking in the Secretary's determination because the ALJ completely ignored evidence from four sources which would have established that she has a severe mental impairment as that term is defined in the listings. As support for her claim, Schmidt points to Dr. Hoffman's and Dr. Eliseo's psychiatric and psychological evaluations, both of which diagnosed Schmidt as having a somatoform disorder and a mixed personality disorder. As to the severity of these impairments, Schmidt points us to the testimony of vocational expert Frank Mendrick and vocational evaluator Steve Spudich, who both thought her mental impairments were severe. Schmidt claims that because the ALJ's order failed to provide an "explicit and reasoned rejection of an entire line of evidence," see Zblewski v. Schweiker, 732 F.2d 75, 78 (7th Cir.1984), then, in accordance with Zblewski, we must reverse the district court and remand to the ALJ to enter the "minimal level of articulation" necessary to provide meaningful appellate review. See id. at 79.
 
 
 15
 At the outset we note that the district court found, and the Secretary agrees, that by failing to raise this issue in her petition to the Appeals Council, Schmidt has waived this issue for judicial review. We agree. In her petition to the Appeals Council, Schmidt makes no mention of her alleged mental impairments, much less that the ALJ ignored evidence offered in support of them.[4] Thus, we agree with the district court that Schmidt has waived this issue. See e.g., Pappendick v. Sullivan, 969 F.2d 298, 302 (7th Cir.1992) ("[W]e decline to consider issues not considered by the Appeals Council."); McEvers v. Sullivan, 785 F.Supp. 1321, 1327 (N.D.Ill.1992) ("Because claimant did not raise [her issues] before the Appeals Council, such arguments cannot be considered now.").
 
 
 16
 Even if Schmidt had not waived this issue, her argument is meritless because, based on our review of the ALJ's order, it is obvious that the ALJ relied upon the very evidence Schmidt alleges he ignored. For example, how else could the ALJ have made his determination that Schmidt suffered from both somatoform and mixed personality disorders, and thus fulfilled the A criteria, unless he did so based on the evaluations of both Drs. Hoffman and Eliseo? As to the functional limitations imposed by these impairments, again, the ALJ made this assessment with the aid of and not in disregard of the evidence. The ALJ discussed Dr. Eliseo's evaluation, which stated that Schmidt would relate well to others in a work setting given her interest in pleasing people. The ALJ further cited to this same report in stating that Schmidt would be capable of unskilled or semi-skilled work on a sustained basis. The ALJ also considered, and did not ignore, Dr. Hoffman's evaluation, which suggested that Schmidt used pain as a solution to living, and also noted that she was quite able to engage in a variety of personal activities, including visiting friends, doing crafts, and performing her own domestic chores such as shopping, laundry, and cooking. Elsewhere in his order, the ALJ referred to Vocational Expert Mendrick's testimony that, based upon the medical evidence and her prior work history, Schmidt's personality disorder would not interfere with her job performance. In fact, the ALJ even paraphrased at length, but eventually rejected as not credible, the testimony most favorable to a finding of severe mental impairment, that of vocational evaluator Steve Spudich. Clearly, the ALJ not only considered the line of evidence referred to by Schmidt; he expressly relied upon a large portion of it in rejecting her claim.
 
 
 17
 B. The ALJ's Erroneous Findings were Harmless.
 
 
 18
 Schmidt's remaining contention is that the ALJ made a series of erroneous findings which he then relied upon to discredit and diminish her subjective complaints. The Secretary concedes that some of the ALJ's findings are erroneous but that they are harmless in light of the substantial evidence supporting the ALJ's ultimate conclusion that Schmidt was not disabled. We agree that the errors were harmless.
 
 
 19
 It is obvious that one paragraph on page 4 of the ALJ's order contained a number of errors. For example, the ALJ states that in exhibit 30 Schmidt told her doctor that her pain first started in March 1989, although throughout this action she has claimed to be disabled as of May 1988. This discrepancy, in the words of the ALJ, "show[s] poor credibility." However, as noted by the district court, and confirmed by our review, exhibit 30 contains no such entry; rather, it is an emergency room record, dated March 5, 1989, in which Schmidt told the treating physician that her back pain started in May 1988. Another error occurs further down the same paragraph where the ALJ cites to exhibit 26, a report from chiropractor D.G. Brandt, for his finding that "[Schmidt] can return to work in May 1988." But exhibit 26 contains no such statement; in fact, in his report, Brandt comments that "thus far, we have not been able to get patient well enough to go back to work." Exh. 26 at 231. Perhaps the most glaring error in the ALJ's discussion is when he states that "[i]n Exhibit 41 the psychiatrist says she does not want to work and thus she is prone to exaggerate, and she has an interest in malingering since she has a worker compensation suit pending." Nowhere in exhibit 41 does it say anything remotely akin to the above statement; moreover, exhibit 41 is not a psychiatrist's report at all, but that of a licensed social worker. While we must defer to the ALJ's credibility assessment of a witness, Young, 957 F.2d at 392, we cannot do so if it is patently wrong. See Schroeder v. Sullivan, 977 F.2d 391, 394 (7th Cir.1992); Stuckey v. Sullivan, 881 F.2d 506, 509 (7th Cir.1989). Had these erroneous findings formed the sole basis for the ALJ's credibility assessment, we would be forced to conclude that it was patently wrong.
 
 
 20
 However, we need not do so because later on in his order, the ALJ expressly made a second credibility assessment of Schmidt, based this time on evidence supported by the record. In support of this second assessment, the ALJ made the following findings: Schmidt was not taking, nor had she been prescribed, a strong codeine or morphine based analgesic, medication which would be consistent with the type of severe and unremitting pain of which she was complaining. Schmidt was not currently seeking medical treatment, and the doctors who had recently seen her could not find objective signs consistent with alleged complaints of pain. The ALJ also observed that Schmidt had not pursued surgery for her carpal tunnel syndrome, even though this condition, if severe, is easily remedied by surgery. Moreover, the ALJ correctly noted inconsistencies in Schmidt's testimony, because, despite her alleged pain, Schmidt had no problems using her hands to engage in a variety of personal activities, including driving, shopping for groceries, weaving and crocheting. Finally, the ALJ, relying upon Dr. Hoffman's evaluation, found that Schmidt exaggerates her pain and uses it as a crutch. Because the ALJ's findings in support of his second credibility determination were based on a correct reading of evidence in the record, we find that the ALJ's previous findings, although erroneous, were nevertheless harmless. See Perez Torrez v. Sec. of Health & Human Services, 890 F.2d 1251, 1255 (1st Cir.1989) (although ALJ misread record in stating that claimant had never alleged a mental impairment, a review of the entire record demonstrated that this error was harmless).
 
 III. Conclusion
 
 21
 The ALJ's decision, as made final by the Secretary, was supported by substantial evidence. The district court's grant of summary judgment in favor of the Secretary is AFFIRMED.
 
 
 
 *
 Donna E. Shalala is substituted for her predecessor, Louis W. Sullivan, as Secretary of Health and Human Services. Fed.R.App.P. 43(c)(1)
 
 
 [1]
 Carpal tunnel syndrome is a disorder associated with compression of the median nerve in the wrist between the tendons of the forearm muscles that flex the hand and the carpal ligament. American Medical Association Encyclopedia of Medicine 238-39 (1989)
 
 
 [2]
 A somatoform disorder is a condition in which there are physical symptoms for which no physical cause can be found, and for which there is definite or strong evidence that the underlying cause is psychological. American Medical Association Encyclopedia of Medicine 923 (1989)
 
 
 [3]
 The B criteria for Secs. 12.07 and 12.08 are the same. To meet these criteria a claimant must prove three of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); (4) repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behavior). See 20 C.F.R. Part 404, Subpart P, Appendix 1, Secs. 12.07B(1)-(4), 12.08B(1)-(4)
 
 
 [4]
 Schmidt's petition contained only the following specific disagreements with the ALJ's decision:
 I am too disabled to work. My back pain keeps me from lifting or stooping. My left knee hurts when I stand a certain way. The back pain has moved into my neck. I have carpal tunnel in both wrists. I do crafts because I enjoy [sic]. I do them inspite [sic] of my pain. I bake on my good days because I enjoy it. I have to do something other than watch TV.
 EX 11.