United States Court of Appeals
 For the First Circuit

No. 98-1302

 HUNG NGUYEN,

 Plaintiff, Appellant,

 v.

 SHIRLEY S. CHATER,

 Defendant, Appellee.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Reginald C. Lindsay, U.S. District Judge]

 Before

 Torruella, Chief Judge,
 Boudin and Lipez, Circuit Judges.

 Ronald B. Eskin on brief for appellant.
 Donald K. Stern, United States Attorney, and Anita Johnson,
Assistant U.S. Attorney, on brief for appellee.

March 26, 1999

 Per Curiam. Claimant Nguyen applied for social
security disability benefits after injuring his back at work in
January, 1993. Following a March, 1995 hearing, an
administrative law judge (ALJ) found that although claimant's
severe lumbar and cervical disc-disease prevented him from
returning to his vocation of welder-carpenter, he retained the
functional capacity for sedentary work and exhibited no
significant exertional or non-exertional impairments. The ALJ
then applied the Medical Vocation Guidelines, 20 C.F.R. Part
404, Subpart P, Appendix 2 (the Grid), to find that the
national economy offered claimant substantial employment; ergo,
he was not disabled. The Appeals Council and the district
court sustained the decision, whereupon claimant appealed to
this court. Claimant argues that the ALJ erred in assessing
his residual functional capacity by ignoring medical evidence,
substituting his judgment for that of medical professionals and
improperly discounting the opinion of a treating physician. 
We agree. We vacate the judgment of the district court with
instructions to remand for further proceedings.
 I. 
 The record shows that claimant was initially
diagnosed by an occupational health clinic with acute lower-
back strain. Despite prescribed rest and medication, he soon
experienced peripheral numbness and radiating pain, triggering
a series of diagnostic tests. In February, the clinic ordered
a magnetic resonance scan (MRI) which revealed some lumbar-disc
degeneration and bulging, but no robust herniation. A follow-
up surgical consultation disclosed no nerve deficits.
 In May, 1993, Neurologist Mahoney, who apparently
assumed primary responsibility for claimant's care, ordered
another MRI which revealed diffuse narrowing of the lumbar
spine, aggravated by disc disease. It also revealed central
disc herniation, although Dr. Mahoney and Dr. Beers, the
performing radiologist, disagreed about the magnitude of the
herniation. At any rate, Dr. Mahoney found claimant utterly
incapacitated and referred him to Dr. Selland for a surgical
consultation. Upon physical examination, Dr. Selland agreed
that claimant was incapacitated and scheduled a myelogram. The
doctors agreed that the myelogram was unremarkable, precluding
surgery.
 By August, Dr. Mahoney reported that claimant's
condition had further deteriorated and he ordered another MRI
to evaluate treatment alternatives. Dr. Beers reported marked
narrowing of the lumbar spinal-canal with potential nerve
compression. Dr. Mahoney concluded that the MRI revealed a
congenitally small, lumbar spinal-canal, aggravated by
secondary disc-protrusions, and that the findings could explain
claimant's severe symptoms. In September, 1993, Dr. Beers
performed a cervical MRI and reported bulging discs with mild
pressure on the cervical cord and diffuse narrowing of the
cervical canal, within the lower limits of normal.
 On October 21, 1993, Dr. Mahoney admitted claimant to
the hospital for 72 hours after he presented with
incapacitating pain. Dr. Mahoney reported that while claimant
exhibited no major, peripheral, neurological abnormalities, he
was debilitated by pain attributable to congenital narrowing of
the lumbar spine, aggravated by bulging discs. This remained
Dr. Mahoney's opinion through the date of his last report,
April, 1994, despite numerous treatments, including, rest,
medications, physical therapy, a back-brace and spinal blocks.
 II.
 In the opinion, the ALJ found that claimant had
discharged his burden of establishing that a severe impairment
prevented him from resuming his former occupation. 
Accordingly, the ALJ proceeded to the determination of
claimant's residual functional capacity. 20 C.F.R. 404.1520
and 404.1561. Since, following the medical advisor, the ALJ
conceded that claimant's condition was painful, his
determination of residual functional capacity had to take into
account the severity of claimant's pain and the extent to which
it impeded his ability to work. 20 C.F.R. 404.1529(a) and
(b); Da Rosa v. Secretary of Health and Human Services, 803
F.2d 24, 25 (1st Cir. 1986). In making this assessment, the ALJ
was required to consider evidence in addition to medical tests,
including, inter alia, claimant's statements, opinions of
treating physicians, reports of claimant's activities and
claimant's course of treatment. 20 C.F.R. 404.1529(c).
 The ALJ found that claimant suffered no significant
exertional or non-exertional impairments which limited his
capacity to perform the full range of sedentary work. He
reasoned that the reports of both Dr. Mahoney and claimant
concerning the severity of claimant's pain and inability to
remain seated were exaggerated. Specifically, claimant could
satisfy his need to change position with regularly-scheduled
breaks. The ALJ then invoked the Grid to prove that claimant
was not disabled.
 III
 Our review is limited to determining whether the ALJ
deployed the proper legal standards and found facts upon the
proper quantum of evidence. Manso-Pizarro v. Secretary, 76
F.3d 15, 16 (1st Cir. 1996)(per curiam). The ALJ's findings of
fact are conclusive when supported by substantial evidence, 42
U.S.C. 405(g), but are not conclusive when derived by
ignoring evidence, misapplying the law, or judging matters
entrusted to experts. Da Rosa v. Secretary, 803 F.2d 24, 26
(1st Cir. 1986)(per curiam); Ortiz v. Secretary of Health and
Human Services, 955 F.2d 765, 769 (1st Cir. 1991). Employing
these standards, we hold that errors of law and a dearth of
evidence invalidated the ALJ's finding that claimant retained
the residual functional capacity to perform sedentary work and
exhibited no significant exertional or non-exertional
impairments.
 Dr. Mahoney repeatedly rendered the opinion that
claimant was incapacitated by severe pain. The ALJ rejected
the opinion as inconsistent with "actual findings made on exam
and the degree of treatment needed," the lack of "recent
treatment," and some unspecified aspect of the entire record. 
This reasoning lacks proper support in the record. With
respect to medical findings and treatment, Dr. Mahoney's
ultimate opinion that claimant suffered severe pain
attributable to spinal stenosis was uncontroverted. Although
his initial May diagnosis of frank herniation may have been
controversial, no medical opinion in the record challenged his
ultimate diagnosis. The medical advisor never addressed, nor
did the ALJ mention, either Dr. Mahoney's ultimate opinion or
the related August and September MRIs. Similarly, no medical
opinion in the record suggested that claimant's course of
treatment was incommensurate with his purported ailment. The
ALJ was not at liberty to ignore medical evidence or substitute
his own views for uncontroverted medical opinion. Rose v.
Shalala, 34 F.3d 13, 18 (1st Cir. 1994); Nieves v. Secretary of
Health and Human Services, 775 F.2d 12, 14 (1st Cir. 1985);
Suarez v. Secretary of Health and Human Services, 740 F.2d 1
(1st Cir. 1984)(per curiam). 
 The Commissioner suggests that despite Dr. Mahoney's
opinion, the medical record supported the ALJ's determination
that claimant was fully capable of performing sedentary work.
As a lay person, however, the ALJ was simply not qualified to
interpret raw medical data in functional terms and no medical
opinion supported the determination. Manso-Pizarro v.
Secretary of Health and Human Services, 76 F.3d 15 (1st Cir.
1996); Perez v. Secretary of Health and Human Services, 958
F.2d 455, 446 (1st Cir. 1991); Berrios Lopez v. Secretary of
Health and Human Services, 951 F.2d 427 (1st Cir. 1991); Gordilsv. Secretary of Health and Human Services, 921 F.2d 327, 329
(1st Cir. 1990).
 The ALJ's grounds for rejecting claimant's own
reports of severe pain and incapacity also lack support in the
record. The ALJ reasoned that claimant's complaints were
inconsistent with his activities and "the degree of treatment
required." Concerning treatment, the record showed that
between the date of his injury and April, 1994, claimant
continually sought and received treatment for back-pain,
including, numerous tests, physical therapy, back-braces,
spinal-blocks, various drug regimes and a hospitalization. 
This was not a case in which a claimant failed to seek
treatment for symptoms later claimed debilitating. C.f.,
Dupuis v. Secretary of Health and Human Services, 869 F.2d 622
(1st Cir. 1989); Perez Torres v. Secretary of Health and Human
Services, 890 F.2d 1251, 1255 (1st Cir. 1989). 
 The ALJ also appealed to a discrepancy between
claimant's alleged inability to remain seated and his admission
that he drove. At the hearing, claimant testified that his
chronic neck and back pain prevented him from remaining seated
for more than an half-hour; he spent his days shifting position
in search of comfort. After taking medication, he reclined for
several hours, sleeping two of those hours. The record
included claimant's December, 1993 request for reconsideration
in which he reported that he had become house-bound, venturing
out only for medical appointments, and could not tie his shoes
or bend. His wife's help was often necessary to don socks and
slacks and to shower. To this evidence, the ALJ counterpoised
claimant's admission that he drove. The only evidence
concerning driving appeared in the initial June, 1993,
disability application, where the unadorned "I drive" was
proffered in response to a request for a description of daily
activities. The ALJ never asked claimant how much he drove or
asked him about his subsequent driving history. 
 In summary, the ALJ's finding that claimant was
capable of performing the full range of sedentary work without
any significant impairments was not supported by the record. 
As claimant argues, the error invalidated the ALJ's application
of the Grid to discharge his burden of proving that claimant
was employable. Pain can constitute a significant non-
exertional impairment which precludes naked application of the
Grid and requires use of a vocational expert. Heggarty v.
Sullivan, 947 F.2d 990, 995 (1st Cir. 1991); Burgos Lopez v.
Secretary of Health and Human Services, 747 F.2d 37, 41-42 (1stCir. 1984); Gagnon v. Secretary of Health and Human Services,
666 F.2d 662, 664, 666 n.8 (1st Cir. 1981). The inability to
remain seated may constitute an exertional impairment which
significantly erodes the occupational base for sedentary work
and requires use of additional vocational resources. Rose v.
Shalala, 34 F.3d 13, 19 (1st Cir. 1994); Social Security Ruling96-9p, 61 Fed. Reg. 34478 (July 2, 1996)(vocational specialist
may be required where period between regularly-scheduled breaks
exceeds capacity to remain seated); Social Security Ruling 83-
12 (1983). 
 IV.
 We vacate the judgment of the district court and
direct the district court to remand the case to the
Commissioner for further proceedings consistent with this
opinion. On remand, the ALJ must reassess, after any
proceedings that may be suitable, the severity of claimant's
symptoms, including his pain and inability to remain seated,
taking into account the entire record and obtaining any expert
medical opinion needed to illuminate the medical records. If
the ALJ finds, as he may, that any treating physician's opinion
is not credible, then he must comply with the regulations by
explicating his grounds. In any event, before simply applying
the Grid, the ALJ must consider the extent to which claimant's
exertional or non-exertional impairments may compromise his
ability to perform sedentary work and utilize appropriate
vocational resources.
 Vacated and remanded.